UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ZACHARY ROSENBAUM,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF SAN JOSE, et al.,<br><br>Defendants. | Case No. 20-CV-04777-LHK<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT**<br><br>Re: Dkt. No. 44 |

Plaintiff Zachary Rosenbaum ("Plaintiff") sues the City of San Jose ("the City"), Officer Ryan Ferguson, Sergeant Hatzenbuhler, Sergeant Gutierrez, Officer Dunn, Officer Anderson, Officer Tapia, Officer Vallejo, Officer Ochoa, and individuals whose identities are unknown to Plaintiffs (collectively, "Defendants") for (1) violations of the Fourth Amendment under 42 U.S.C. § 1983; (2) battery; (3) violation of the Bane Act; and (4) negligence. Before the Court is Defendants' motion to dismiss Plaintiff's Third Amended Complaint. ECF No. 44. Having considered the parties' submissions, the relevant law, and the record in this case, the Court GRANTS IN PART AND DENIES IN PART Defendants' motion to dismiss.

1

United States District Court
Northern District of California

United States District Court
Northern District of California

I.    **BACKGROUND**

    **A. Incorporation by Reference**

    Before the Court describes the facts of this case, the Court must address Defendants' argument that the police report is incorporated by reference into Plaintiff's Third Amended Complaint ("TAC").

    Although Plaintiff does not identify the police report in Plaintiff's TAC, Plaintiff selectively quotes from the police report ("Police Report") to describe his fiancée's allegations to the police.  ECF No. 40 ¶ 16 ("TAC").  Defendants argue that because Plaintiff selectively quotes from the police report, the entirety of the police report must be incorporated by reference.  ECF No. 44 at 3 n.1

    "Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion."  *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 (9th Cir.1989) (citing *Fort Vancouver Plywood Co. v. United States*, 747 F.2d 547, 552 (9th Cir.1984)).  "There are, however, . . . exceptions to the requirement that consideration of extrinsic evidence converts a 12(b)(6) motion to a summary judgment motion."  *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir.2001).  "If the documents are not physically attached to the complaint, they may be considered if the documents authenticity . . . is not 'contested and the plaintiff's complaint necessarily relies' on them."  *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir.2001) (quoting *Parrino v. FHP, Inc.*, 146 F.3d 699, 705–06 (9th Cir.1998)).

    Here, the Police Report forms the basis for Plaintiff's claims.  In the Court's order granting the motion to dismiss the Second Amended Complaint, the Court instructed Plaintiff to allege facts including "the severity of the crime at issue," which is an element of Plaintiff's claims.  ECF No. 39 at 8.  Plaintiff's Third Amended Complaint selectively quotes the Police Report in order to describe the severity of the crime at issue.  TAC ¶ 16.  Under the Ninth Circuit's case law, that is sufficient to incorporate the Police Report, which is attached to Defendants' motion to dismiss, by reference.

    The Court therefore recites the facts of the case as pleaded in the Plaintiff's TAC, but with

2

1   added details from the Police Report regarding the incident.

2   **B.  Alleged Use of Force Against Plaintiff**

3   According to the Third Amended Complaint ("TAC"), on the evening of September 10,

4   2019, Plaintiff was asleep inside an upstairs bedroom at the home he shared with his fiancée.  ECF

5   No. 44 ¶ 15 ("TAC").  Plaintiff alleges that earlier that day he and his fiancée had engaged in a

6   "verbal and physical altercation."  TAC ¶ 16.  The TAC states: "Unbeknownst to Plaintiff, his

7   fiancée had called the police and reported that Plaintiff had 'scratch[ed] her, pull[ed] her hair and

8   us[ed] body force to hold [her] down while licking her face.'" (alterations in original)).  *Id.* ¶ 16.

9   The TAC strategically crops the quotation from the Police Report.  In fact, the Police

10   Report states: "The suspect assaulted his girlfriend/fiance [sic]/cohabitant strangling her,

11   scratching her, pulling her hair and using body force to hold the victim down while licking her

12   face."  ECF No. 44-1 at 1 ("Police Report").  Thus, the TAC strategically omits the allegation that

13   Plaintiff strangled his fiancée.

14   The Police Report, which is incorporated by reference in the TAC, adds additional details.

15   The home belonged to Plaintiff's fiancée, and Plaintiff had recently moved in.  Police Report at 2.

16   After Plaintiff's fiancée managed to escape, she contacted the police and told the police she was in

17   pain.  *Id.* at 1.  Police confirmed that Plaintiff's fiancée had visible marks from the assault.  *Id.*

18   Plaintiff's fiancée also expressed fear because Plaintiff had been violent in the past.  *Id.* at 2–3.  In

19   the past Plaintiff's fiancée had obtained a restraining order against Plaintiff.  *Id.* at 6.

20   The remaining allegations are from the TAC.  The police came to Plaintiff's home and

21   spoke with Plaintiff's fiancée, who was outside the home.  TAC ¶ 17.  Plaintiff states that he

22   awoke to the "sound of San Jose police officers inside his home calling his name."  *Id.* ¶ 18.

23   According to Plaintiff, he did not know that the police were in his home to investigate his

24   fiancée's reports of domestic violence.  *Id.*  Plaintiff "walked to the top of the stairs and saw

25   multiple police officers (Defendants) shining their lights at Plaintiff's face and pointing their

26   handguns at Plaintiff."  *Id.* ¶ 19.

27

28   Case No. 20-CV-04777-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S
THIRD AMENDED COMPLAINT

United States District Court
Northern District of California

3

1    The Court refers to Sergeants Hatzenbuhler and Gutierrez and Officers Anderson, Tapia,

2   Vallejo, and Ochoa collectively as the "Bystander Officers."  Plaintiff alleges that, though he

3   stood at the top of the stairs with "his hands up in the air where Defendants could see them," *id.*

4   ¶ 19, the Bystander Officers "trained their firearms on Plaintiff and took defensive positions on the

5   ground floor of the apartment," *id.* ¶ 22.  Plaintiff also alleges that Sergeant Gutierrez "was the on-

6   scene supervisor in charge of the seizure" and that Sergeant Hatzenbuhler "commanded several of

7   the officers to take positions inside the [Plaintiff's] house." *Id.*

8    Plaintiff "asked the Defendants in a polite and respectful manner why they were inside his

9   home and what they wanted with him." *Id.* ¶ 19.  Defendants allegedly informed Plaintiff that he

10   was under arrest," but they did not tell Plaintiff why he was being arrested. *Id.* "Instead,

11   Defendants issued commands for . . . Plaintiff to come down the stairs." *Id.*

12    Plaintiff allegedly "repeatedly asked the Defendants what he was being arrested for and

13   what [the Defendants] wanted with him." *Id.* ¶ 20.  All the while, Plaintiff's hands were "visibly

14   raised." *Id.* ¶ 20, 21.  Defendants "repeatedly refused to tell Plaintiff the reason for his purported

15   arrest and commanded the Plaintiff to come down the stairs." *Id.* ¶ 20.  According to Plaintiff, "at

16   least one officer" repeatedly told Plaintiff that if he did not come down the stairs and obey the

17   officers' commands, "a police K-9 would be deployed." *Id.*  Plaintiff repeatedly refused to come

18   down the stairs. *See id.* ¶ 21 ("Plaintiff continued asking why Defendants were inside his

19   home . . .while he stood on the second-floor landing.")

20    Plaintiff allegedly continued "to keep his hands visibly raised" and "continued asking why

21   Defendants were inside his home and what they wanted with him." *Id.* ¶ 21.  According to

22   Plaintiff, he "did not threaten any of the officers either verbally or physically at any point" while

23   Plaintiff was interacting with the officers. *Id.*  Plaintiff also alleges that he was unarmed and that

24   "there were no reports by anyone to the contrary." *Id.*

25    Allegedly "[l]osing patience with the Plaintiff's questions," Officer Dunn "deployed a

26   police K-9 to attack the Plaintiff." *Id.* ¶ 24.  The police dog was deployed "even though Plaintiff

27

28   Case No. 20-CV-04777-LHK
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S
     THIRD AMENDED COMPLAINT

United States District Court
Northern District of California

had his hands visibly raised in the air and was not threatening any of the officers." *Id.*  Plaintiff also alleges that the Bystander Officers "continued pointing their weapons at Plaintiff" when the police dog was deployed. *Id.*  The Bystander Officers were allegedly "integral participants in the use of force" in part because they continued to point their weapons at Plaintiff when the police dog was deployed, and in part because they took no actions "to prevent, or otherwise intervene[], in the use of force against Plaintiff" despite being "aware that [Officer Dunn]" was threatening to deploy the police dog. *Id.*  Plaintiff believes that after the police dog was deployed to bite Plaintiff, "and while Plaintiff was laying on his stomach in full surrender with his hands stretched out," Defendants surrounded him on all sides, trained their firearms on Plaintiff, and allowed the police dog "to continue biting the [Plaintiff] for over 20 seconds, before being pulled away." *Id.* ¶ 27.

Additionally, "[w]ithin a second of the K-9 being deployed, [Officer Ferguson] shot the Plaintiff with a less-lethal shotgun bean-bag projectile weapon, striking the Plaintiff in the stomach."

## C. Procedural History

On July 16, 2020, Plaintiff filed the instant case.  ECF No. 1.  On September 25, 2020, Defendants filed a motion to dismiss Plaintiff's complaint.  ECF No. 18.  On October 11, 2020, Plaintiff filed an Amended Complaint in lieu of opposing Defendants' motion to dismiss.  ECF No. 21.  On October 23, 2020, the Court denied Defendants' motion to dismiss as moot.  ECF No. 25.

On October 16, 2020, Plaintiff filed a Corrected First Amended Complaint.  ECF No. 22. On October 21, 2020, the parties stipulated to permit Plaintiff to file a Second Amended Complaint.  ECF No. 23.  On October 23, 2020, the Court granted the parties' stipulation.  ECF No. 24.

On October 24, 2020, Plaintiff filed the Second Amended Complaint.  ECF No. 26.  On November 13, 2020, Defendants filed a motion to dismiss the Second Amended Complaint. ECF No. 30.  The Court granted that motion with leave to amend on April 13, 2021.  ECF No. 39.

Case No. 20-CV-04777-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S
THIRD AMENDED COMPLAINT

United States District Court
Northern District of California

On April 20, 2021, Plaintiff filed a Third Amended Complaint.  ECF No. 40.  Defendants filed the instant motion to dismiss on May 4, 2021.  ECF No. 44 ("Mot.").  Plaintiff filed an opposition on May 18, 2021.  ECF No. 45 ("Opp.").  Defendants filed a reply on May 25, 2021.  ECF No. 47 ("Reply").

## II.    LEGAL STANDARD

### A.  Dismissal Pursuant to Federal Rule of Civil Procedure 12(b)(6)

Rule 8(a) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).  Rule 8(a) requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (internal quotation marks omitted).  For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

The Court, however, need not accept as true allegations contradicted by judicially noticeable facts, *see Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and it "may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into a motion for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995).  Nor must the Court "assume the truth of legal conclusions merely because they are cast in the form of factual allegations."  *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)).  Mere

6

1   "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to

2   dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

3   **B.  Leave to Amend**

4       If the Court determines that a complaint should be dismissed, it must then decide whether

5   to grant leave to amend.  Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to

6   amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose

7   of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities."

8   *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations and internal quotation

9   marks omitted).  When dismissing a complaint for failure to state a claim, "'a district court should

10  grant leave to amend even if no request to amend the pleading was made, unless it determines that

11  the pleading could not possibly be cured by the allegation of other facts."  *Id.* at 1130 (internal

12  quotation marks omitted).  Accordingly, leave to amend generally shall be denied only if allowing

13  amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the

14  moving party has acted in bad faith.  *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532

15  (9th Cir. 2008).

16  **III.   DISCUSSION**

17       In Plaintiff's Third Amended Complaint ("TAC"), Plaintiff asserts four claims against the

18  Defendants.  First, Plaintiff alleges that Defendants violated his Fourth Amendment Right to be

19  free from excessive force under 42 U.S.C. § 1983.  TAC ¶¶ 37–51.  Second, Plaintiff alleges that

20  Defendants committed battery against him.  *Id.* ¶¶ 52–58.  Third, Plaintiff alleges that Defendants

21  violated the Bane Act during Defendants' interactions with Plaintiff.  *Id.* ¶¶ 59–65.  Fourth and

22  finally, Plaintiff argues that Defendants were negligent.  *Id.* ¶¶ 66–71.

23       Defendants challenge Plaintiff's allegations for several reasons.  First, Defendants contend

24  that the individual officers are each entitled to qualified immunity.  Mot. 5–8.  Second, Defendants

25  contend that Plaintiff fails to allege that the Bystander Officers were "integral participants" in any

26  Fourth Amendment violation.  *Id.* at 8–10.  Third, Defendants argue that Plaintiff failed to support

27

28

*United States District Court*
*Northern District of California*

1    Plaintiff's allegation that Sergeants Hatzenbuhler and Gutierrez were liable as supervisors for any

2    Fourth Amendment violation.  *Id.* at 10–11.  Fourth, Defendants argue that Plaintiff failed to

3    allege facts that support a plausible § 1983 claim against the City of San Jose.  *Id.* at 11–18.  Fifth,

4    Defendants argue that Plaintiff has not sufficiently pleaded facts to plausibly support Plaintiff's

5    battery, Bane Act, and negligence claims.

6          The Court addresses each of the Plaintiff's claims and the Defendants' arguments in turn.

7    **A.  Qualified Immunity**

8          The Court notes at the outset the unusual procedural posture in this case.  Typically,

9    federal courts cannot dismiss a complaint "unless 'it is clear that no relief could be granted under

10   any set of facts that could be proved consistent with the allegations.'"  *Wong v. United States*, 373

11   F.3d 952, 956–57 (9th Cir. 2004).  But Defendants have invoked the defense of qualified

12   immunity, to which they are entitled at the motion to dismiss stage in order "to protect against the

13   burdens of discovery and other pre-trial procedures."  *Id.* at 957 (citing *Behrens v. Pelletier*, 516

14   U.S. 299, 307 (1996)).  "Determining claims of qualified immunity at the motion-to-dismiss stage

15   raises special problems for legal decision making."  *Keates v. Koile*, 883 F.3d 1228, 1234 (9th Cir.

16   2018).  For better or for worse, when qualified immunity is invoked in a motion to dismiss,

17   "courts may be called upon to decide far-reaching constitutional questions on a nonexistent factual

18   record . . . ."  *Wong*, 373 F.3d at 957.

19         Under United States Supreme Court precedent, "officers are entitled to qualified immunity

20   under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the

21   unlawfulness of their conduct was 'clearly established at the time.'"  *District of Columbia v.*

22   *Wesby*, 138 S. Ct. 577, 589 (2018) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)).

23         The first prong of the qualified immunity analysis asks whether the facts alleged show that

24   the officer's conduct violated a constitutional right.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

25   When a plaintiff alleges the use of excessive force during arrest, "the federal right at issue is the

26   Fourth Amendment right against unreasonable searches and seizures."  *Tolan v. Cotton*, 572 U.S.

27

28   Case No. 20-CV-04777-LHK
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S
     THIRD AMENDED COMPLAINT

*United States District Court*
*Northern District of California*

8

650, 656 (2014).  The inquiry into whether this right has been violated requires the Court to balance "'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion.'"  *Tennessee v. Garner*, 471 U.S. 1, 8 (1985).

The second prong of the qualified immunity analysis is "whether the right in question was 'clearly established' at the time of the violation."  *Tolan*, 572 U.S. at 656.  For conduct to violate a "clearly established" federal right, "existing law must have placed the constitutionality of the officer's conduct to be 'beyond debate.'"  *Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)).

Plaintiff alleges two separate acts of excessive force against the individual police officers. First, Plaintiff argues that Defendant Dunn's deployment of the police dog to bite and hold Plaintiff for over 20 seconds was an objectively excessive use of force in the circumstances that Defendant Dunn faced.  *See* TAC ¶¶ 39.  Second, Plaintiff argues that Defendant Ferguson's firing of a "less-lethal" shotgun bean-bag projectile at Plaintiff after the police dog had already been deployed was an excessive use of force in the circumstances that Defendant Ferguson faced. Defendants contend that all the individual police officers are entitled to qualified immunity.  Mot. at 5–8.  The Court examines each alleged violation in turn.

### 1.  Qualified Immunity for the Deployment of the Police Dog

When addressing the question of qualified immunity, courts have discretion to decide in which order they will address each prong of the qualified immunity analysis.  Because the Court believes that first analyzing whether "the right in question was 'clearly established' at the time of the violation," *Tolan*, 572 U.S. at 656, will streamline the analysis of whether Officer Dunn is entitled to qualified immunity for deploying his police dog, the Court analyzes only the guiding case law at the time of the incident.  The incident in question occurred on September 10, 2019, so all case law that could "clearly establish" a violation must have been published before that date.

In his opposition to the Defendants' motion to dismiss, Plaintiff argues that Officer Dunn

Case No. 20-CV-04777-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT

United States District Court
Northern District of California

"should never have released his K9 in the first place." Opp. at 9. Plaintiff's rationale is that a police dog can be a "severe" use of force, and that deploying the police dog was unnecessary because Plaintiff was being "merely uncooperative" with police officers. *Id.* Even when interpreting the TAC in the light most favorable to Plaintiff, as the Court must in a motion to dismiss, Plaintiff's characterization of the circumstances facing the officers is understated.

According to the Police Report, which Plaintiff has incorporated by reference into the TAC, police officers entered Plaintiff's home expecting to find a violent suspect who had allegedly strangled his fiancée and had allegedly been violent in the past. *See* Police Report at 2. Police had reason to believe Plaintiff's fiancée because they noticed marks on her. *Id.* at 1.

Moreover, in Plaintiff's opposition to the instant motion to dismiss, Plaintiff states several times that Officer Dunn "repeatedly" told Plaintiff that if he failed to descend the stairs, Officer Dunn would deploy his police dog. Opp. 14. Despite Officer Dunn's repeated warnings that the dog would be deployed, Plaintiff repeatedly refused to descend the stairs and "repeatedly [asked] why officers were in his home and why he was being arrested." Opp. 3.

Moreover, based on the fact that the officers were "shining their lights at Plaintiff's face" during the officer's interaction with Plaintiff, Plaintiff's house was dark. *See* TAC ¶ 18. Although Plaintiff alleges that no person reported that Plaintiff was armed, *see* TAC ¶ 21, neither does Plaintiff allege that officers had knowledge that Plaintiff was unarmed.

In sum, officers entered Plaintiff's home and found more than a "merely uncooperative" suspect. Officers entered the home of a man who they believed had committed a violent crime, who repeatedly refused to follow police instructions despite repeated warnings that a police dog would be deployed, who was standing in the dark at the top of stairs, and who could potentially access weapons on the second floor.

Plaintiff compares the use of force he faced in response to his noncompliance with the use of force in *Smith v. City of Hemet*, 394 F.3d 689, 702–03 (9th Cir. 2005) (en banc). In *Smith*, officers arrived at the home of a man who had allegedly hit his wife earlier in the day. *Smith*, 394

Case No. 20-CV-04777-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S
THIRD AMENDED COMPLAINT

United States District Court
Northern District of California

F.3d at 693.  The Ninth Circuit held that officers' use of force in *Smith* was excessive when they pepper-sprayed the suspect four times, slammed the suspect into a door frame, slammed the suspect into the ground, dragged the suspect off his porch face down, and allowed a police dog to attack him on two or three separate occasions.  *Id.* at 702.  Although the suspect had assaulted his wife earlier in the night, *id.* at 693, which is similar to the circumstances that the officers faced in Plaintiff's case, Plaintiff did not suffer nearly the same intrusion into his Fourth Amendment rights as the suspect in *Smith* did.  The suspect in *Smith* was pepper-sprayed four times, slammed into a door frame, slammed into the ground, dragged off a porch face down, and attacked by a police dog on two or three separate occasions.  Instead, Plaintiff alleges that police dogs should not be used against "passive" suspects and that *Smith* stands for this proposition.

The United States Supreme Court has "repeatedly stressed that courts must not 'define clearly established law at a high level of generality, since doing so avoids the crucial question of whether the official acted reasonably in the particular circumstances that he or she faced.'" *Wesby*, 138 S. Ct. at 590 (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 779 (citation omitted)).  The facts in *Smith* differ drastically from the facts in the instant case.  Specifically, the intrusion into the suspect's Fourth Amendment rights was much greater in *Smith* than in this case.  Plaintiff does not allege that he was pepper-sprayed, slammed, dragged or repeatedly attacked by a police dog.

Moreover, the Ninth Circuit has held that deploying a police dog may be appropriate when officers face situations in which suspects are refusing to surrender.  For example, in *Lowry v. City of San Diego*, 858 F.3d 1248 (9th Cir. 2017), the Ninth Circuit sitting *en banc* held that an officer's use of force was reasonable when, after multiple warnings, the officer deployed his police dog to search for a suspected robber.  *Lowry*, 858 F.3d at 1252.  The dog briefly bit the suspect, who had in fact committed no crime and had not threatened the officer, and who was asleep when the officer issued his warnings.  *Id.* at 1254.  In both *Lowry* and the instant case, the officers issued warnings that their dogs may bite if the suspect did not surrender.  *Compare id.* at 1252, *with* TAC ¶ 20 ("[A]t least one officer warned Plaintiff that if he did not obey the officers' commands, a

11

1    police K-9 would be deployed.").  However, in *Lowry*, the dog bite happened so quickly that the

2    officer did not even know the bite had occurred.  *Lowry*, 858 F.3d at 1257.  *Lowry* stands for the

3    proposition that deploying a police dog to briefly subdue an uncooperative suspect is not

4    necessarily an excessive use of force.

5         Similarly, the Ninth Circuit held in *Miller v. Clark County* that deploying a police dog was

6    not an excessive use of force.  340 F.3d 959 (9th Cir. 2003).  In that case, a police officer chased a

7    suspect into the woods and warned the suspect that he had five seconds to make himself known, or

8    a police dog would be sent to find the suspect.  *Id.* at 961.  The suspect did not respond, so the

9    police officer deployed the police dog.  *Id.*  The Ninth Circuit held that the police officer's

10   deployment of the police dog was reasonable, even though the dog bite, which lasted 45-60

11   seconds, resulted in "severe injury" to the suspect.  *Id.* at 961, 967–68.

12        The United States Supreme Court has held that the inquiry into whether case law is

13   "clearly established" must be taken in light of the *specific context of the case,*" *Mullenix*, 136 S.

14   Ct. at 308 (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam)).  Given the fact

15   that there was no Ninth Circuit or Supreme Court case law as of September 2019 that would have

16   clearly established that deploying a police dog on an uncooperative person suspected of

17   committing a violent crime who does not comply with repeated police instructions after repeated

18   warnings that a dog would be deployed would constitute an unreasonable use of force, the Court

19   must conclude that Officer Dunn has qualified immunity for deploying his police dog to detain

20   Plaintiff.  Therefore, Defendants' motion to dismiss with regard to Plaintiff's § 1983 claim about

21   the deployment of the police dog is GRANTED.

22        **2.   Qualified Immunity for the Duration of the Dog Bite**

23        Although the Court decides that Officer Dunn is entitled to qualified immunity for the

24   deployment of his police canine, that does not end the Court's inquiry.  Plaintiff also alleges that

25   Officer Dunn violated Plaintiff's Fourth Amendment rights by allowing the police dog to bite

26   Plaintiff for "over 20 seconds" before the dog was pulled away.  TAC ¶ 27.  Plaintiff also alleges

27

28   Case No. 20-CV-04777-LHK
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S
     THIRD AMENDED COMPLAINT

United States District Court
Northern District of California

1    that he was laying on his stomach on the floor with his hands stretched in front of him in complete

2    surrender as the dog bit him.  *Id.* ¶ 39.

3        The use of force to effect an arrest is subject to the Fourth Amendment's prohibition on

4    unreasonable searches and seizures.  *Graham v. Connor*, 490 U.S. 386, 396 (1989) ("Where, as

5    here, the excessive force claim arises in the context of an arrest or investigatory stop of a free

6    citizen, it is most properly characterized as one invoking the protections of the Fourth

7    Amendment . . . .").  To determine whether force is reasonable as opposed to "unreasonable," the

8    Court balances "'the nature and quality of the intrusion on the individual's Fourth Amendment

9    interests' against the countervailing governmental interests at stake."  *Id.* (quoting *Garner*, 471

10   U.S. at 8–9).  The reasonableness of a particular use of force "must be judged from the perspective

11   of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  *Id.*  Because

12   Defendants invoke qualified immunity as a defense in their motion to dismiss, "we have to

13   determine whether the facts as alleged state a claim for violation of constitutional or statutory

14   rights."  *Wong v. United States*, 373 F.3d 952, 962 (9th Cir. 2004).  However, because Defendants

15   raise qualified immunity in a motion to dismiss, the Court must still construe Plaintiff's TAC in

16   the light most favorable to Plaintiff.  *Manzarek*, 519 F.3d at 1031.

17        **a.  Plaintiff's Plausible Allegations of Excessive Force**

18        To determine whether government action constitutes excessive force, courts in the Ninth

19   Circuit partake in a three-step analysis.  First, the Court determines "the severity of the intrusion

20   on the individual's Fourth Amendment rights by evaluating the type and amount of force

21   inflicted."  *Glenn v. Washington Cnty.*, 673 F.3d 864, 871 (9th Cir. 2011).  Second, the Court

22   determines "the government's interest in the use of force."  *Id.*  Third, the Court balances "the

23   gravity of the intrusion on the individual" and "the government's need for that intrusion."  *Id.*

24   Each excessive force analysis is a "highly fact-intensive task for which there are no per se rules,"

25   so the Court's analysis must be specific to the facts of this case.  *Torres v. City of Madera*, 648

26   F.3d 1119, 1124 (9th Cir. 2011).  Because the Court is evaluating the officers' entitlement to

27

28   Case No. 20-CV-04777-LHK
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S
     THIRD AMENDED COMPLAINT

United States District Court
Northern District of California

1    qualified immunity at the motion to dismiss stage, we take as true all the facts alleged in the TAC.

2    *See Manzarek*, 519 F.3d at 1031 ("For purposes of ruling on a Rule 12(b)(6) motion, the Court

3    "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light

4    most favorable to the nonmoving party.").

5         First, the Court determines the severity of the alleged intrusion into Plaintiff's Fourth

6    Amendment rights.  "Our precedent establishes that characterizing the quantum of force with

7    regard to the use of a police dog depends on the specific factual circumstances." *Lowry*, 858 F.3d

8    at 1256.  Here, we decide that the quantum of force was severe.  According to the facts alleged in

9    the TAC, the police dog was allowed to "continue biting Plaintiff's [arm] for over 20 seconds,

10   before being pulled away." TAC ¶ 27.  While the dog was biting Plaintiff, Plaintiff was "laying

11   on the ground in complete surrender." *Id.* ¶ 30.  Plaintiff suffered "extensive" and "permanent"

12   damage to his arm, *id.* at ¶ 27, and Plaintiff had to "undergo several surgeries and procedures" as a

13   result of the dog bite, *id.* at ¶ 28.  Although in *Miller* the Ninth Circuit held that a 45-60 second

14   dog bite was constitutional in the particular circumstances of that case, the Ninth Circuit also

15   observed in *Miller* that the police dog ordinarily bit a suspect for only about four seconds before

16   the police officer ordered the dog to release.  340 F.3d at 961.

17        In the instant case, where the police dog was allowed to bite for more than twenty seconds

18   Plaintiff who was laying on his stomach and where the bite caused extensive damage, is very

19   similar to another case in which the Ninth Circuit decided that the officer's use of force was

20   deemed to be excessive.  In *Watkins v. City of Oakland*, 145 F.3d 1087, 1090 (1998), officers

21   responded to a silent alarm at a warehouse, but the suspect was nowhere in sight.  *Id.*  Officers

22   deployed their police dog to locate the suspect, who was hiding in his car.  *Id.*  The dog located

23   and bit the suspect, and the officers quickly arrived on the scene.  *Id.*  Instead of calling off their

24   police dog, the officers ordered the suspect to show his hands.  *Id.*  The suspect failed to comply

25   with the officers' orders "because he was resisting the dog and recoiling from the pain of [the

26   dog's] attack." *Id.*  Approximately "ten to fifteen seconds elapsed between the time [the officers]

27

28   Case No. 20-CV-04777-LHK
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S
     THIRD AMENDED COMPLAINT

1    ordered [the suspect] to show his hands and the [the suspect] complied with that order." *Id.* The

2    Plaintiff suffered "multiple lacerations and punctures" to his left foot, and a "jagged tearing of the

3    skin" that was deep enough for emergency staff to see the suspect's tendons. *Id.* (internal

4    quotations omitted).

5         In *Watkins* the Ninth Circuit, upon analyzing the facts, determined that the level of force

6    applied—specifically the duration of the bite—constituted an "unconstitutional application of

7    force under clearly established law." *Id.* at 1093. Indeed, the Ninth Circuit called out the fact that

8    the duration of the bite and "the improper encouragement and continuation of the attack"

9    constituted "excessive force that would be a constitutional violation." *Id.*

10        The quantum of force used in *Watkins* is very similar to the quantum of force used in the

11   instant case, at least under the facts pleaded in the TAC. Here, officers allegedly allowed their

12   police dog to bite Plaintiff for "over 20 seconds" before the officers pulled the police dog away.

13   TAC ¶ 27. Over twenty seconds is even more than the approximately ten to fifteen seconds

14   officers allowed the dog to bite in *Watkins*. Moreover, just like in *Watkins*, the officers allegedly

15   watched Plaintiff struggle with the dog while the officers surrounded him with their guns drawn.

16   TAC ¶ 24. Moreover, Plaintiff and the suspect in *Watkins* suffered similar injuries. Plaintiff's

17   TAC includes a photograph of the wound he suffered because of the police dog bite. *See* TAC

18   ¶ 24 (photograph located below paragraph). In the photograph, which was allegedly taken by

19   emergency room staff, Plaintiff's skin has been completely torn open to expose Plaintiff's muscles

20   from nearly his wrist to his elbow. *Id.* Plaintiff's wound is similar to the wound in *Watkins*, in

21   which there was a jagged tear that exposed his tendons. *Watkins*, 145 F.3d at 1090. Moreover, the

22   suspect in *Watkins* suffered "mobility problems and complained of pain a year and a half

23   following the dog bite. *Id.* at 1091. In the instant case, Plaintiff alleges that he "has not regained

24   full use of his arm" over two years following the incident. TAC ¶ 28. Similarly, both the suspect

25   in Watkins and Plaintiff had to undergo surgeries to help heal their wounds. *Compare Watkins*,

26   145 F.3d at 1091, *to* TAC ¶ 28. Therefore, the quantum of force in *Watkins* is very similar to the

United States District Court
Northern District of California

15

1    quantum of force used against Plaintiff in the instant case.

2        In sum, the officers in *Watkins* and the officers in the instant case both faced a suspect

3    lying on the ground being bitten by a police dog while being surrounded by armed officers with

4    weapons drawn, and in both the instant case and *Watkins*, the officers allowed the police dog to

5    continue to bite the suspect, which resulted in severe injuries to the suspect.  Therefore, the degree

6    of the Fourth Amendment intrusion that Plaintiff suffered was similar to the clearly established

7    constitutional intrusion that Plaintiff suffered in *Watkins*.

8        Here, where the dog was allegedly allowed to bite Plaintiff for over twenty seconds while

9    officers watched, where Plaintiff suffered serious injuries requiring surgical intervention, and

10   where Plaintiff still suffers the effects of those injuries, and making all inferences in favor of

11   Plaintiff, *Manzarek*, 519 F.3d at 1031, the Court decides that the intrusion on Plaintiff's Fourth

12   Amendment interests was severe under the allegations in the TAC.

13       Second, the Court must "assess the importance and legitimacy of the government's

14   countervailing interests" in the government's use of force.  The United States Supreme Court has

15   given courts three factors to consider when determining the importance of the government's

16   interests.  *See Graham*, 490 U.S. at 396.  First, the Court must consider "the severity of the crime

17   at issue."  Second, the Court must consider "whether the suspect poses an immediate threat to the

18   safety of the officers or others."  The second factor, whether the suspect poses an immediate threat

19   to the safety of officers or others, is the most important factor.  *Smith*, 394 F.3d at 702 ("The 'most

20   important single element of the three specified factors . . . [is] whether the suspect poses an

21   immediate threat to the safety of others.'" (quoting *Chew v. Gates*, 27 F.3d 1432, 1441 (9th Cir.

22   1994))).  *Id.*  Third, the Court must consider whether the plaintiff is "actively resisting arrest or

23   attempting to evade arrest by flight."  *Id.*  The Court is mindful that it "must construe facts in the

24   light most favorable to [Plaintiff] at this stage."  *Mattos v. Agarano*, 661 F.3d 433, 449 (9th Cir.

25   2011).

26       The first factor, the severity of the crime at issue, slightly favors Defendants.  Officers

27

28   Case No. 20-CV-04777-LHK
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S
     THIRD AMENDED COMPLAINT

United States District Court
Northern District of California

arrived at Plaintiff's house preparing to arrest him for an alleged strangling of Plaintiff's fiancée. TAC ¶ 16; Police Report at 1–3.  Moreover, Plaintiff allegedly had been violent to his fiancée in the past.  *Id.* at 2–3.  The Ninth Circuit has recognized that "[d]omestic violence situations are 'particularly dangerous' because 'more officers are killed or injured on domestic violence calls than on any other type of call.'"  *George v. Morris*, 736 F.3d 829, 839 (9th Cir. 2013) (quoting *Mattos*, 661 F.3d at 450).

However, the Ninth Circuit has also held that risks to officers responding to a domestic violence call are "less salient 'when the domestic dispute is seemingly over by the time the officers begin their investigation.'"  *Id.* (quoting *Mattos*, 661 F.3d at 450).  According to the TAC, the alleged victim was outside of the house when officers arrived.  TAC ¶ 17.  Although Ninth Circuit case law is "mindful of the seriousness and reprehensibility of domestic abuse," when circumstances are like those at issue in this case, particularly when a suspect is separated from the alleged victim of his violence, "the nature of the crime at issue provides little, if any, basis for the officers' use of physical force."  *Smith*, 394 F.3d at 702–03 (holding that the "severity of the crime" *Graham* factor weighed in favor of the suspect, even after the suspect's wife reported that the suspect had beat her, when the suspect was separated from his wife, the suspect was unarmed, and the suspect was clad in pajamas).  However, Ninth Circuit cases subsequent to *Smith* have held the crimes that carry an inherent risk of violence are severe enough to weigh in favor of an officer's use of force.  *See, e.g.*, *Lowry*, 858 F.3d at 1257–58 (observing that because burglary carries an inherent risk of violence, the severity of the crime at issue weighed in favor of the city's use of force).

Understanding that the Ninth Circuit directs the Court to consider the fact that the alleged victim was separated from Plaintiff, and making all inferences in favor of Plaintiff for this motion to dismiss, the Court finds that the severity of the crime factor weighs slightly in favor of Defendants.

The second factor, and the most important factor, is "whether the suspect poses an

17

immediate threat to the safety of the officers or others." *Id.* at 702.  Because Defendants seek

qualified immunity at the motion to dismiss stage, the Court must make inferences in the light

most favorable to Plaintiff.  *Manzarek*, 519 F.3d at 1031.

Plaintiff, according to his TAC, was standing at the top of his stairs, with his hands in the

air, clad only in a tank top and sweatpants, and was completely unarmed.  *See* TAC ¶¶ 20–21.

Plaintiff's TAC alleges that "there were no reports by anyone" that said he was armed.  *Id.* ¶ 21.

Plaintiff also allegedly did not threaten the officers, either verbally or physically.  *Id.* ¶ 21.

Moreover, Plaintiff alleges that at least six officers had their firearms trained on Plaintiff.  *Id.* ¶ 22.

Even further, officers had Plaintiff's home "surrounded and a police helicopter hovered over the

residence." *Id.* ¶ 23.

More importantly, at the time officers allowed the police dog to continue to bite Plaintiff,

Plaintiff was allegedly "laying on his stomach with his hands stretched out in complete surrender."

*Id.* ¶ 39.  Additionally, while Plaintiff was laying on his stomach with his arms outstretched and

the police dog continued to bite him, "Plaintiff was completely surrounded" by the officers on the

scene, who all "had their firearms drawn."  *Id.*  Drawing all inferences in favor of the Plaintiff, as

the Court must on a motion to dismiss, the Court concludes that Plaintiff was not a danger to

others.  Thus, the second and most important factor weighs in favor of Plaintiff.

The third and final factor is whether Plaintiff was "actively resisting arrest or attempting to

evade arrest by flight."  *Graham*, 490 U.S. at 396.  This factor also weighs in favor of Plaintiff

based on the facts alleged in the TAC.  Plaintiff was not "attempting to evade arrest by flight."  *Id.*

According to the TAC, Plaintiff stood stationary on his second floor landing with his hands held in

the air.  TAC ¶¶ 18–19.  Although Plaintiff repeatedly refused to descend the stairs while Officer

Dunn repeatedly threatened to release his dog, *id.* ¶ 20, once Plaintiff had been bitten, Plaintiff

complied with police instructions.  Moreover, Plaintiff was "laying on his stomach with his hands

stretched out in complete surrender" while being bitten by the police dog.  TAC ¶ 39.

Furthermore, Plaintiff could not flee in light of the armed police officers inside his home and the

Case No. 20-CV-04777-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S
THIRD AMENDED COMPLAINT

police officers and police helicopter outside his home.

Third, the Court must balance "the gravity of the intrusion on the individual" and "the government's need for that intrusion." *Glenn*, 673 F.3d at 871. Plaintiff suffered a serious intrusion of his Fourth Amendment rights. Officers released a dog to bite and hold Plaintiff for more than twenty seconds despite the fact that Plaintiff lay on his stomach with his hands outstretched, was in full view of officers with their firearms pointed at Plaintiff, was only wearing a tank top and cotton sweatpants, and did not appear to be armed. TAC ¶ 39. Plaintiff was also not attempting to flee and could not flee in light of the armed police officers and police helicopter. *See Smith*, 394 F.3d at 703; TAC ¶ 23. Although Plaintiff was accused of committing a violent crime against his fiancée, the Ninth Circuit has also held that the most important factor in the balancing test is whether Plaintiff posed an immediate threat to the officers. *Smith*, 394 F.3d at 702. The TAC does not contain facts to show that the officers were in immediate danger while the officers continued to allow the police dog to bite Plaintiff. Therefore, under the facts alleged, and making all inferences in favor of Plaintiff as the Court is required to do at the motion to dismiss stage, Officer Dunn's use of force in this situation was unreasonable and excessive.

Defendants argue that the circumstances of this case are akin to *Miller*, 340 F.3d at 961, in which a severe dog bite was held to be constitutionally sound under the circumstances. Opp. 5–7. However, *Miller* is inapposite. In *Miller*, the officer was reasonably afraid of being ambushed by the suspect. *Miller*, 340 F.3d at 965. The suspect had fled into a dark forest located near the suspect's house, and the "terrain was treacherous, strewn with . . . unseen obstacles obscured by darkness." *Id.* (internal quotation marks omitted). Moreover, although the officer did not know whether the suspect was armed, the officer in *Miller* knew that the suspect had "possessed a large knife moments earlier" and that law enforcement intelligence suggested that the suspect was "not law enforcement friendly." *Id.* The Ninth Circuit considered these circumstances "objectively menacing," *id.*, and the Ninth Circuit determined that the use of the police dog to bite and hold the suspect was objectively reasonable in order to "neutralize the many strategic advantages [the

19

United States District Court
Northern District of California

United States District Court
Northern District of California

1  suspect] had obtained by crouching in the darkness in a remote and unbounded landscape familiar

2  only to [the suspect] and treacherous to others who might enter," *id.* at 966.  Additionally,

3  although the police dog in *Miller* was allowed to bite the suspect for "between forty-five and sixty

4  seconds," *id.* at 961, the officer promptly called off the police dog as soon as he located the

5  suspect in the dark woods and determined the suspect was unarmed.  *Id.*  Despite the fact that the

6  officer called off the police dog as quickly as was reasonable, the suspect in *Miller* still suffered

7  severe injuries, including muscles shredded all the way to the bone.  *Id.* at 961.

8      The "objectively menacing" circumstances in *Miller* were not present in the instant case.

9  Officer Dunn could have had no reasonable fear of ambush, when interpreting the facts alleged in

10  the TAC in the light most favorable to Plaintiff.  According to the TAC, Plaintiff was laying on his

11  stomach on the floor with his arms stretched out in front of him while the police dog continued to

12  bite.  TAC ¶ 39.  Officer Dunn did not need the police dog to track down and hold onto the suspect

13  while Officer Dunn got his bearings.  Moreover, unlike the officer in *Miller* who "promptly"

14  called off his dog when he located his suspect, the officers in the instant case allegedly watched

15  the police dog bite Plaintiff even though Plaintiff had his arms outstretched and the officers had

16  Plaintiff in view and were training their guns on Plaintiff.  TAC ¶ 39.

17      Defendants also argue that this case is similar to *Lowry*, in which officers were responding

18  to a burglar alarm in a dark building and believed that a burglary was still in progress.  *Lowry*, 858

19  F.3d at 1252.  "[B]urglary and attempted burglary carry an inherent risk of violence."  *Id.* at 1257

20  (quoting *Sandoval v. Las Vegas Metro. Police Dep't*, 756 F.3d 1154, 1163 ((9th Cir. 2014)).  The

21  officers deployed a police dog, who led the officers through the building until the officers located

22  a person "laying down on a couch."  *Id.* at 1253.  "Within seconds," and "very quickly" the officer

23  called off his police dog, who had bitten the plaintiff's lip.  *Id.* at 1253, 1257.

24      *Lowry* is also inapposite.  The officer in *Lowry* called off his dog "very quickly" after the

25  dog bit the plaintiff's lip.  Indeed, the bite happened so quickly that the officer did not even know

26  that the bite had occurred.  *Id.* at 1257. Additionally, the officer only deployed his police dog

27

28  Case No. 20-CV-04777-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S
THIRD AMENDED COMPLAINT

because he was searching a dark, commercial building late at night and did not know where the suspect was. *Id.* at 1252. As soon as the suspect was located, the dog was called off. *Id.* at 1257.

The facts in *Lowry* are completely different from the facts of the instant case. Here, the officers were training their guns on Plaintiff. TAC ¶ 39. Moreover, Officer Dunn allowed his police dog to bite Plaintiff for more than twenty seconds, despite the fact that Plaintiff was lying prone on his stomach with his arms outstretched in "complete surrender." *Id.*

The instant case is more akin to *Watkins*, where the Ninth Circuit found that officers who stood and watched a suspect be bitten by a dog for just ten to fifteen seconds had used excessive force on that suspect. *Watkins*, 145 F.3d at 1090. Although *Watkins* also involved officers responding to a burglary alarm, like the officers in *Lowry* did, the critical difference is the fact that the officer in *Lowry* called off his police dog before he knew that contact with the suspect had been made, whereas the officers in *Watkins* failed to call of their police dog for between ten and fifteen seconds. The officers here faced the same situation as in *Watkins*—a suspect lying prone on the ground. Therefore, making all inferences in favor of Plaintiff, the Court is controlled by the outcome in *Watkins*, not the outcome in *Lowry* or *Miller*.

Defendants also argue that the fact that the crime at issue was an alleged domestic violence incident is an important factor to consider in the totality of the circumstances facing the officers. Opp. at 6. But as discussed, Ninth Circuit case law also directs us to consider the fact that this factor is less compelling when the alleged victim of domestic abuse is separated from the perpetrator of that abuse. *Smith*, 394 F.3d at 702–03 (noting that the fact that the underlying crime was a domestic abuse did not necessitate a severe use of force when the suspect was separated from the victim and was unarmed and clad in pajamas); *see also George*, 736 F.3d at 839 (holding that the risks to officers responding to a domestic violence call are "less salient 'when the domestic dispute is seemingly over by the time the officers begin their investigation'" (quoting *Mattos*, 661 F.3d at 450)).

At the motion to dismiss stage, the Court must make all reasonable inferences in the

Case No. 20-CV-04777-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT

1    Plaintiff's favor.  *Manzarek*, 519 F.3d at 1031.  Because of the severity of the alleged intrusion

2    into Plaintiff's Fourth Amendment right against unreasonable searches and seizures, and because

3    the government interest in favor of the alleged intrusion was mitigated by other facts alleged in the

4    TAC, the Court finds that Plaintiff has plausibly alleged a violation of his Fourth Amendment

5    rights.

### b.  Clearly Established Case Law Regarding Dog Bites

7        The second prong of the qualified immunity analysis is "whether the right in question was

8    'clearly established' at the time of the violation." *Tolan*, 572 U.S. at 656.  That means the law

9    must have been clearly established as of the date of this incident, September 10, 2019.  TAC ¶ 15.

10        Defendants argue that the law guiding when police dogs could be used was not clearly

11   established at the time Plaintiff was bitten.  Mot. at 7; Reply at 5.  Plaintiff disagrees.  Plaintiff

12   argues that Ninth Circuit case law clearly establishes that officers cannot use more than a trivial

13   amount of force on a person who is being merely uncooperative with officers.  Opp. at 9.  Plaintiff

14   also argues that Officer Dunn "shouldn't have allowed his dog to continue biting Plaintiff after

15   [Plaintiff] was already prone in a surrender position."  Opp. at 9.

16        Ninth Circuit case law does clearly establish that the duration of the dog bite—allegedly

17   over 20 seconds—violated Plaintiff's clearly established rights.  In *Watkins*, 145 F.3d at 1090, a

18   clearly established constitutional violation was found because officers allowed their police dog to

19   continue to bite a "helpless" suspect who was "surrounded by police officers with their guns

20   drawn." *Watkins*, 145 F.3d at 1090.  In *Watkins*, the bite lasted approximately thirty seconds, ten

21   to fifteen seconds of which the officers allowed after the officers located the suspect.  *Id.*  Because

22   of the bite, the suspect suffered a jagged laceration that was so deep that his tendons were

23   exposed.  *Id.*  In *Watkins*, the Ninth Circuit held that this use of force was excessive and thus

24   unconstitutional under clearly established law.  *Id.* at 1093 (citing *Mendoza v. Block*, 27 F.3d at

25   1357, 1362 (9th Cir. 1994)).

26        The facts in *Watkins* bind the Court's decision here.  Based on the facts in the TAC,

Case No. 20-CV-04777-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S
THIRD AMENDED COMPLAINT

United States District Court
Northern District of California

officers allowed their police dog to bite Plaintiff while he was "laying on his stomach with his hands outstretched in complete surrender." TAC ¶ 39. Moreover, the officers had "their firearms drawn" on Plaintiff at the time of the bite. *Id.* Because of the bite, Plaintiff suffered a deep laceration and "extensive and permanent damage to his arm." *Id.* ¶ 24. Plaintiff also had to undergo "several surgeries" because Officer Dunn allowed the police dog to bite the Plaintiff for over twenty seconds. Indeed, the officers in *Watkins* may have had even more reason to allow their police dog to bite the suspect in that case, because that suspect did not put his hands above his head as the officers requested. *Watkins*, 145 F.3d at 1093. In the instant case, Plaintiff had his arms outstretched in front of him. TAC ¶ 39.

Because the situation that confronted Officer Dunn when he allowed his police dog to continue to bite Plaintiff was so similar to the situation that the officers in *Watkins* confronted, the Court finds that "clearly established" Ninth Circuit case law "clearly prohibit[ted] the officer's conduct in the particular circumstance before him." *See Wesby*, 138 S. Ct. at 590. District courts have found similarly in like circumstances. *See, e.g.*, *Hartsell v. Cnty. of San Diego*, 2019 WL 291965 at *14 (S.D. Cal. Jan. 23, 2019) (concluding that officers were not entitled to qualified immunity when officers continued to deploy a police canine after suspect surrendered and showed his hands); *Koistra v. Cnty. of San Diego*, 310 F. Supp. 3d 1066 (S.D. Cal. 2018) (finding that *Watkins* clearly established that prolonged use of a police canine for thirty seconds after suspect put his hands in the air was unlawful).

Therefore, under the facts alleged in Plaintiff's TAC, and interpreting all facts in Plaintiff's favor as the Court is required to do on a motion to dismiss, the Court finds that Plaintiff has plausibly alleged that Officer Dunn's use of his police canine for over twenty seconds constituted unconstitutionally excessive force under clearly established Fourth Amendment law, and thus, Officer Dunn is not entitled to qualified immunity. The Court therefore DENIES Defendants' motion to dismiss Plaintiff's excessive force claim as to the duration of the dog bite.

### 3. Qualified Immunity for the Less-Lethal Bean-Bag Shotgun

23

Case No. 20-CV-04777-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S
THIRD AMENDED COMPLAINT

1   Plaintiff also alleges that his Fourth Amendment rights were violated when Officer

2   Ferguson shot "Plaintiff with a less lethal shotgun bean-bag projectile weapon, striking the

3   Plaintiff in the stomach." TAC ¶ 25.  Plaintiff alleges that he was shot with the less-lethal bean-

4   bag shotgun "within a second" of the police dog being deployed.  *Id.*  Plaintiff alleges that firing

5   the less-lethal bean-bag shotgun was "unreasonable and excessive force."  TAC ¶ 40.

6   When addressing the question of qualified immunity, courts have discretion to decide in

7   which order they will address each prong of the qualified immunity analysis.  Because the Court

8   believes that first analyzing whether "the right in question was 'clearly established' at the time of

9   the violation," *Tolan*, 572 U.S. at 656, will streamline the analysis of whether Officer Ferguson is

10   entitled to qualified immunity, the Court conducts an analysis of clearly established law at the

11   time of the incident.  The incident in question occurred on September 10, 2019, so all case law that

12   could "clearly establish" a violation must have been published before that date.

13   Defendants argue that the law guiding when less-lethal bean-bag shotguns could be used

14   was not clearly established at the time Plaintiff was shot. Mot. at 8; Reply at 5–6.  Plaintiff

15   disagrees.  Plaintiff argues that Ninth Circuit case law clearly establishes that officers cannot use

16   more than a trivial amount of force on a person who is being merely uncooperative with officers,

17   and that the less-lethal bean-bag shotgun was more than trivial force.  Opp. at 10–11.

18   Less-lethal bean-bag shotgun rounds are made "of lead shot contained in a cloth sack, and

19   are small enough to be fired from a shotgun."  *Deorle v. Rutherford*, 272 F.3d 1272, 1277 (9th Cir.

20   2001).  A bean-bag round is "akin to a rubber bullet," *id.* at 1279, and is designed to "knock down

21   a target, rendering the individual incapable of resistance, without (in the normal course of

22   deployment) resulting in death," *id.* at 1280.

23   Clearly established case law at the time of the incident does not support that the less-lethal

24   bean-bag shotgun was excessive force.  Plaintiff has not cited any case that states that officers may

25   not use a less-lethal bean-bag shotgun when detaining an uncooperative suspect.  The closest case

26   that Plaintiff cites is *Deorle*, in which a police officer deployed a less-lethal bean-bag shotgun on a

United States District Court
Northern District of California

1   man who was not suspected of committing a crime. *Id.* at 1277. The officer observed the suspect

2   "from the cover of some trees," and noticed that the suspect was carrying an "unloaded plastic

3   crossbow in one hand and what may have been a can or a bottle of lighter fluid in the other." *Id.*

4   The officer instructed the suspect to put down the crossbow, and the suspect complied with the

5   instruction. *Id.* Then, the suspect started slowly walking toward the officer. *Id.* Without telling

6   the suspect to stop walking, and without warning, the officer fired his less-lethal bean-bag shotgun

7   at the suspect. *Id.* at 1277–78. The bean-bag round hit the suspect in the face and "lodged half out

8   of his eye." *Id.* at 1278 (internal quotation marks omitted). The Ninth Circuit ruled in that case

9   that firing upon the man was excessive force, particularly because the man was not suspected of a

10  crime, was unarmed, and was emotionally distraught. *Id.* at 1283–85. The Ninth Circuit denied

11  qualified immunity to the officer in that case. *Id.* at 1285–86.

12          However, there are three very important distinctions between *Deorle* and the instant case.

13  First, in the instant case, Plaintiff was suspected of a crime, whereas the plaintiff in *Deorle* was

14  not. Second, Plaintiff refused to comply with the officers' repeated instructions to come down the

15  stairs, whereas the suspect in *Deorle* had followed all of the officers' instructions. Third, the

16  suspect in *Deorle* suffered severe injuries including the loss of his eye. *Id.* at 1278. In the instant

17  case, Plaintiff does not state that he suffered any injury from the bean-bag round, aside from the

18  fact that he was hit in the stomach. TAC ¶ 25. Under United States Supreme Court case law,

19  which requires clearly established case law to govern officer conduct "in the particular

20  circumstance before [the officer]," *Wesby*, 138 S. Ct. at 590, *Deorle* cannot clearly establish that

21  Officer Ferguson's conduct was unreasonably excessive. The officer in *Deorle* and Officer

22  Ferguson faced significantly different circumstances.

23          Moreover, the United States Supreme Court has specifically instructed courts in the Ninth

24  Circuit "not to read [the Ninth Circuit's] decision in [*Deorle*] too broadly in deciding whether a

25  new set of facts is governed by clearly established law." *Kisela v. Hughes*, 138 S. Ct. 1148, 1154

26  (2018). In the face of the above important distinctions and the United States Supreme Court's

27

28  Case No. 20-CV-04777-LHK
    ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S
    THIRD AMENDED COMPLAINT

United States District Court
Northern District of California

specific instruction about the *Deorle* decision, the Court cannot read *Deorle* to have established that Officer Ferguson's conduct in this case was prohibited by clearly established case law.

Plaintiff's counterargument, that a less-lethal bean-bag shotgun is a non-trivial use of force and therefore excessive in these circumstances, Opp. 10–11, is not tied to the specific facts of Plaintiff's case.  The United States Supreme Court has "repeatedly stressed that courts must not 'define clearly established law at a high level of generality, since doing so avoids the crucial question of whether the official acted reasonably in the particular circumstances that he or she faced.'"  *Wesby*, 138 S. Ct. at 590 (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 779 (citation omitted)).  The Supreme Court has also admonished that specificity of facts is "especially important in the Fourth Amendment context," because Fourth Amendment analysis is so fact specific.  *Mullenix*, 577 U.S. at 12.  Given the Supreme Court's warnings about specificity, and its specific instruction regarding the case upon which Plaintiff relies, the Court cannot conclude that the law clearly established that Officer Ferguson's deployment of the less-lethal bean-bag shotgun constituted excessive force.

Therefore, Officer Ferguson is entitled to qualified immunity for his use of the less-lethal bean-bag shotgun, and the Defendants' motion to dismiss this portion of Plaintiff's excessive force claim is GRANTED.

### 4.   Remaining Officers' Entitlement to Qualified Immunity

Defendants argue that Officers Hatzenbuhler, Gutierrez, Anderson, Tapia, Vallejo, and Ochoa are entitled to qualified immunity because the officers "cannot be held liable for participating in what would not have been a clearly established Fourth Amendment violation."  Mot. at 8.  Because the Court decides that shooting the less-lethal bean-bag shotgun and deploying the police dog were not clearly established constitutional violations, the Bystander Officers are entitled to qualified immunity as to those claims.  Because the Court has held that allowing the police dog to bite Plaintiff for over twenty seconds was a clearly established Fourth Amendment violation, the Bystander Officers are not entitled to qualified immunity as to that claim.

United States District Court
Northern District of California

5. **Leave to Amend**

The Court does not grant leave to amend a complaint when amendment of the complaint would be "futile." *Leadsinger*, 512 F.3d at 532. Here, no additional pleadings can change the fact that there was no clearly established case law at the time of the incident that would have made clear to a reasonable officer that deploying the police canine and firing the less-lethal bean-bag shotgun round at Plaintiff were unreasonable and excessive uses of force in violation of the Fourth Amendment. Indeed, a future change in law could not help Plaintiff. Plaintiff may only cite cases that would clearly establish that the officers used excessive use of force that were published before the incident on September 10, 2019.

There are no facts that Plaintiff could allege that would change the state of United States Supreme Court or Ninth Circuit case law in September 2019. Thus, amending the TAC with more factual allegations would be futile. *Leadsinger*, 512 F.3d at 532. Moreover, Plaintiff has already filed four complaints, and Defendants have already filed three motions to dismiss. Ninth Circuit case law grants discretion to district courts to deny leave to amend "due to 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment.'" *Id.* (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Granting Plaintiff leave to file a fifth complaint and requiring Defendants to file a fourth motion to dismiss would cause undue delay and prejudice Defendants. *See id.* Thus, leave to amend this claim is DENIED.

B. **Integral Participant Claims**

The TAC alleges that Sergeants Hatzenbuhler and Gutierrez, and Officers Anderson, Tapia, Vallejo, and Ochoa were "integral participants" in Officer Dunn's use of excessive force because they "failed to intervene against the use of excessive force." TAC ¶ 24. Plaintiff also alleges that the sergeants and officers were aware that Officer Dunn "was threatening to release the police K-9," yet none of the officers took any actions to prevent the deployment of the police canine or intervene in the twenty full seconds that the canine bit Plaintiff. *Id.*

27

United States District Court
Northern District of California

In the Ninth Circuit, "integral participants in" a constitutional violation may be held liable for that violation even if those participants did not "directly engage in the unconstitutional conduct themselves." *Hopkins v. Bonvicino*, 573 F.3d 752, 770 (9th Cir. 2009).  Under Ninth Circuit case law, "'integral participation' does not require that each officer's actions themselves rise to the level of a constitutional violation." *Boyd v. Benton Cnty.*, 374 F.3d 773, 780 (9th Cir. 2004).  In fact, the Ninth Circuit has expressly stated that officers who provided "armed backup during an unconstitutional search were 'integral' to that search, and the officers were therefore participants rather than mere bystanders." *Id.* (citing *James ex rel. James v. Sadler*, 909 F.2d 834 (5th Cir. 1990)).  Additionally, "[P]olice officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen." *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000) (quoting *United States v. Koon*, 34 F.3d 1416, 1447 n.25 (9th Cir. 1994), *rev'd on other grounds*, 518 U.S. 81 (1996)).

Based on the facts Plaintiff has alleged in his TAC, Plaintiff has properly stated an integral participant claim against Sergeants Hatzenbuhler and Garcia and Officers Anderson, Tapia, Vallejo, and Ochoa.  A reasonable officer should have known that allegedly allowing a police canine to bite a suspect who was "laying on his stomach with his hands stretched out in complete surrender" for more than twenty seconds was an unreasonable use of force. *See Watkins*, 145 F.3d at 1093 (holding that a thirty-second bite from a police dog constituted "clearly established" excessive force).  Moreover, those officers had a duty to intercede on Plaintiff's behalf under Ninth Circuit case law. *Cunningham*, 229 F.3d at 1289 (holding that police officers have a duty to intercede when officers violate constitutional rights of suspects).  When making inferences in favor of Plaintiff, as the Court must at motion to dismiss, Plaintiff has properly alleged in his TAC that the other officers had the duty and opportunity to order Officer Dunn to call off his dog, particularly because the Ninth Circuit has previously noted that dog bites typically last "for only about four seconds" before the dog is ordered to release. *Miller*, 340 F.3d at 961.

Defendants' arguments that the Sergeants and Officers cannot be integral participants are

28

inapposite.  Defendants have three main arguments.  First, Defendants argue that the Bystander Officers' actions of shining their flashlights and pointing their firearms at Plaintiff were not "wrongful."  Mot. at 9.  However, under Ninth Circuit case law, officers may be integral participants in a constitutional violation even when those officers did not "directly engage in the unconstitutional conduct themselves."  *Hopkins*, 573 F.3d at 770.

Second, Defendants state that standing by with weapons drawn while Officer Dunn's police canine bit Plaintiff for more than twenty seconds could not be a constitutional violation. Mot. at 9.  But the Ninth Circuit has specifically held that officers who provide armed backup during a constitutional violation are integral participants.  *See Boyd*, 374 F.3d at 780.

Third, Defendants argue that because "the entire encounter with the dog lasted 20 seconds," "the facts cannot be construed to support the inference that officers had a reasonable opportunity to intervene."  Reply at 7.  However, at the motion to dismiss stage, the Court makes inferences in favor of the Plaintiff, not Defendants.  *Manzarek*, 519 F.3d at 1031.  Plaintiff has sufficiently alleged that at some point during the more than twenty seconds while he was bitten by the police dog, one of the officers could have intervened to help him.  TAC ¶ 39.

All together, the facts alleged in the TAC are sufficient to state that the officers were integral participants in the more than twenty second dog bite, especially when Ninth Circuit case law holds that standing by with weapons drawn is sufficient to show that officers are integral in an unconstitutional search.  *See Boyd*, 374 F.3d at 780.

Because Plaintiff's TAC alleges sufficient facts to state a plausible claim that Sergeants Hatzenbuhler and Gutierrez, and Officers Anderson, Tapia, Vallejo, and Ochoa were integral participants in the use of excessive force during the duration of the police dog bite, Defendants' Motion to Dismiss the § 1983 claim against those officers is DENIED.

**C.  Supervisory Liability Claims**

The TAC alleges that Sergeants Hatzenbuler and Gutierrez "failed to train, supervise and or control the conduct of Defendant [sic] Ferguson and Dunn and, in fact, encouraged their

29

United States District Court
Northern District of California

conduct." TAC ¶ 43.  Plaintiff also alleges that the Sergeants "knew or reasonably should have known that the Plaintiff was going to be continually bitten" by Officer Dunn's police canine, and that the Sergeants "acquiesced to and or encouraged this conduct."  Defendants argue that any claim of "supervisory liability" should be dismissed because Plaintiff fails to state any facts that would establish supervisory liability.  Mot. 10–11.

Under § 1983, "supervisory officials are not liable for actions of subordinates on any theory of vicarious liability."  *Hansen v. Black*, 885 F.2d 642, 645–46 (9th Cir. 1989).  "A defendant can be held liable as a supervisor under § 1983 'if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'"  *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen*, 885 F.2d at 646).

Supervisors are personally involved in a constitutional deprivation for their "culpable action or inaction in the training, supervision or control of [their] subordinates; for [their] acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others."  *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998) (internal alteration and quotation marks omitted); *accord Starr*, 652 F.3d at 1208.  Plaintiffs can show that the supervisor caused the constitutional deprivation "by setting in motion a series of acts by others" or by "knowingly refusing to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury."  *Redman v. Cnty. of San Diego*, 942 F.2d 1435, 1447 (9th Cir. 1991) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743–44 (9th Cir. 1978), *abrogated on other grounds by Farmer v. Brennan*, 511 U.S. 825 (1994).

Turning to the instant case, Plaintiff has alleged sufficient facts to state a plausible claim that Sergeants Hatzenbuhler and Gutierrez are liable under a supervisory liability theory.  Plaintiff alleges that Sergeants Hatzenbuhler and Gutierrez were pointing their firearms at Plaintiff and heard that Officer Dunn was planning to deploy his police canine.  TAC ¶ 24.  Furthermore,

Case No. 20-CV-04777-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT

United States District Court
Northern District of California

Plaintiff alleges that Sergeants Hatzenbuhler and Gutierrez were present during the entirety of the more than twenty second police canine bite.  *Id.*  Plaintiff also alleges that Sergeants Hatzenbuhler and Gutierrez took no action to "prevent, or otherwise intervene[], in the use of force against Plaintiff."  *Id.*  Finally, Plaintiff alleges that "Sergeant [Hatzenbuhler] and [Gutierrez] knew or reasonably should have known that Plaintiff was going to be continually bitten by the K-9 after Plaintiff was laying on his stomach[,] had his hands stretched out in surrender[,] unarmed and not resisting or trying to flee[,] and they acquiesced to and or encouraged this conduct."  TAC ¶ 46.

The Court concludes that Plaintiff's allegation that Sergeants Hatzenbuhler and Gutierrez "acquiesced in" the more than twenty second deployment of Officer Dunn's police canine satisfies *Watkins*'s standard as to when supervising officers are "personally involved" in an alleged constitutional deprivation.  *Watkins*, 145 F.3d at 1093 (holding that "acquiesc[ing]" in a constitutional deprivation constitutes personal involvement of an officer).  Sergeants Hatzenbuhler and Gutierrez were present during the entire encounter, and so had knowledge of the dog bite.  TAC ¶ 24.  Furthermore, Plaintiff alleges that the sergeants did nothing to intervene in the dog bite, despite its duration.  *See* TAC ¶ 24.  Because Plaintiff alleges Sergeants Hatzenbuhler and Gutierrez were "personally involved" in the constitutional deprivation, Plaintiff has properly stated a claim for supervisory liability.

Defendants argue that the TAC is deficient because "[i]t is not enough to allege that Sergeants Hatzenbuhler and Gutierrez were supervisors."  Mot. at 11.  Defendants are correct that if Plaintiff had merely alleged that Sergeants Hatzenbuhler and Gutierrez were supervisors, Plaintiff's claim for supervisory liability would not be sufficient.  On the contrary, Plaintiff specifically alleges that Sergeants Hatzenbuhler and Gutierrez witnessed the entire more than twenty second police dog bite and did nothing to intervene during the police dog's bite.  TAC ¶ 24.

Defendants also argue that Sergeants Hatzenbuhler and Gutierrez could not have had time to intervene in the more than twenty second dog bite.  Again, assuming that Sergeants

31

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Hatzenbuhler and Gutierrez could not have had time to act in the more than twenty second time

2    frame would require the Court to draw inferences in favor of the Defendants, rather than Plaintiff.

3    *See Manzarek*, 519 F.3d at 1031 (holding that at the motion to dismiss stage, the Court "accept[s]

4    factual allegations in the complaint as true and construe[s] the pleadings in the light most

5    favorable to the nonmoving party").

6            Defendants also contend that Plaintiff's complaint does not allege any facts "as to what

7    either Sergeant Hatzenbuhler or Sergeant Gutierrez did, saw, or knew." Mot. at 11. However, the

8    TAC alleges that Sergeants Hatzenbuhler and Gutierrez "train[ed] their firearms on Plaintiff" as

9    Officer Dunn deployed the police dog while Plaintiff was "on the ground in complete surrender"

10   and being bitten. TAC ¶ 30. When interpreting the facts of the TAC in Plaintiff's favor, as the

11   Court must on a motion to dismiss, the Court cannot find that Sergeants Hatzenbuhler and

12   Gutierrez saw nothing and knew nothing when the Plaintiff alleges that the Sergeants witnessed

13   the police dog bite Plaintiff and failed to intervene or advise their officers.

14           Because Plaintiff has sufficiently alleged that Sergeants Hatzenbuhler and Gutierrez

15   acquiesced in a constitutional violation, the motion to dismiss is DENIED with regard to

16   Plaintiff's claim for supervisory liability.

17           **D.  Section 1983 Claim Against the City of San Jose**

18           Local governments, like the City of San Jose, are "persons" subject to liability under 42

19   U.S.C. § 1983 only when an official policy or custom is the moving force behind a constitutional

20   violation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694–95 (1978). Generally speaking, a

21   plaintiff states a § 1983 claim against a city or municipality when the plaintiff alleges "(1) that [the

22   plaintiff] possessed a constitutional right of which he was deprived; (2) that the municipality had a

23   policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right;

24   and (4) that the policy is the moving force behind the violation." *Dougherty v. City of Covina*, 654

25   F.3d 892, 900 (9th Cir. 2011) (internal quotation marks omitted) (alterations in original).

26   Municipalities may also be held liable when a failure to train its employees amounts to "a policy

27

28
     Case No. 20-CV-04777-LHK
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S
     THIRD AMENDED COMPLAINT

1   of 'deliberate indifference' if the need to train was obvious and the failure to do so made a

2   violation of constitutional rights likely." *Id.* (citing *City of Canton v. Harris*, 489 U.S. 378, 390

3   (1989)).

4        Plaintiff's TAC sets out several theories by which it alleges the City of San Jose ("City")

5   violated Plaintiff's constitutional rights.  First, Plaintiff argues that the City has a "policy, custom

6   and practice of encouraging and permitting the . . . excessive use of police K-9s, even on persons

7   who are not evading arrest, or posing a threat to officers or bystanders." TAC ¶ 48.  Second,

8   Plaintiff alleges that the City has a policy allowing the deployment of less-lethal bean-bag

9   shotguns, which predictably causes constitutional violations, and that the City inadequately trains

10  its officers in the deployment of police dogs and less-lethal bean-bag shotguns.  TAC ¶¶ 49, 50.

11  Third, Plaintiff, alleges that the City has a custom or practice of encouraging excessive force by its

12  officers.  TAC ¶ 51.  Fourth and finally, Plaintiff alleges that the City either does not train or

13  inadequately trains its police officers regarding the use of force on citizens.  TAC ¶¶ 50.  The

14  Court first addresses Plaintiff's allegations regarding unconstitutional policies. The Court will then

15  discuss Plaintiff's allegations regarding an unconstitutional custom or practice.  Finally, the Court

16  will address Plaintiff's allegations regarding the City of San Jose's failure to train its officers.

17      **1.  The City's Policies**

18       In order to allege that a city's policy violated Plaintiff's constitutional rights, Plaintiff's

19  TAC must "contain sufficient allegations of underlying facts to give fair notice and to enable the

20  opposing party to defend itself effectively"; the TAC "may not simply recite the elements of a

21  cause of action." *AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012)

22  (quoting *Starr*, 652 F.3d at 1216).  Under Ninth Circuit case law, a "policy" is a "deliberate choice

23  to follow a course of action . . . made from among various alternatives by the official or officials

24  responsible for establishing final policy with respect to the subject matter in question." *Fogel v.*

25  *Collins*, 531 F.3d 824, 834 (9th Cir. 2008).

26       Plaintiff alleges that two of the City's policies were the moving force behind the alleged

27

28
Case No. 20-CV-04777-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S
THIRD AMENDED COMPLAINT

United States District Court
Northern District of California

1    constitutional violation that he suffered: (1) Plaintiff alleges that the City's "bite and hold" policy

2    regarding its use of police dogs caused his injury, TAC ¶ 48; and (2) Plaintiff alleges that the

3    City's less-lethal bean-bag shotgun policy caused his injury, *id.* ¶ 49.  The Court addresses each

4    policy in turn.

### a.  The City's Bite and Hold Policy

6        Defendants argue that Plaintiff has pleaded insufficient facts to support Plaintiff's claim

7    that the City has a "policy of allowing/training its police K-9s to 'bite and hold' suspects even

8    where a suspect is surrendering." TAC ¶ 48.  To support Plaintiff's allegation that such a policy

9    exists, Plaintiff cites only to statistics from the Marshall Project that show that San Jose residents

10   can expect to be bitten by a police dog at a higher rate than residents of San Francisco.  TAC ¶ 32.

11   Plaintiff argues that the increased incidence of bites from police dogs, along with the existence of

12   a policy where San Jose police officers might utilize a "bite and hold" method when deploying

13   police canines, evidences a City policy that provides for the use of unconstitutionally excessive

14   force by deployment of police canines.  *See* TAC ¶¶ 34, 48.

15       The Court concludes that Plaintiff's TAC does not contain sufficient allegations of facts to

16   support Plaintiff's claim against the City.  The fact that bites from police dogs happen more often

17   in San Jose than in San Francisco does not support an inference that all (or any) of those bites

18   were unconstitutionally excessive uses of force.  Additionally, Plaintiff makes no allegation that

19   the police dog statistics produced by the Marshall Project are associated with the City of San Jose

20   Police Department or some other law enforcement agency.

21       Moreover, there are instances in which a "bite and hold" policy *can* be constitutional.  *See,*

22   *e.g.*, *Miller*, 40 F.3d at 961 (holding that a police dog's sixty-second long bite was not excessive

23   force when the dog located a suspect who was hiding in treacherous terrain); *Lowry*, 858 F.3d at

24   1259 (holding that woman who had not committed a crime did not suffer a constitutional injury

25   when she was bitten by a police dog that was searching a dark office building).  There are

26   instances in which the deployment of a police dog is pivotal to protect officer safety, particularly

27

28   Case No. 20-CV-04777-LHK
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S
     THIRD AMENDED COMPLAINT

United States District Court
Northern District of California

34

1    when a dog can be used to search a dark area in which a possibly armed suspect is hiding. *See*

2    *Miller*, 40 F.3d at 961; *Lowry*, 858 F.3d at 1259. Additionally, allowing officers to effectively

3    locate and disarm a hidden suspect with a dog can prevent officers from needing to use deadly

4    force, such as firearms. *See Miller*, 340 F.3d at 963 (holding that the deployment of a police dog

5    does not present a reasonable probability of death). If a "bite and hold" policy were found

6    unconstitutional, police officers might need to enter dark and dangerous situations without the

7    benefit of a dog, which could elevate the level of force used. In such situations, both suspects and

8    officers could be presented with more danger.

9        Additionally, the Ninth Circuit has held that simply reciting the cause of action is

10   insufficient to state a claim for municipal liability under § 1983. *AE ex rel. Hernandez*, 666 F.3d

11   at 637. In essence, Plaintiff has only recited the cause of action in his TAC. For example,

12   Plaintiff simply alleges that the City has "a policy or custom" that "permits officers to use their K-

13   9s for longer periods of time when effectuating arrest." TAC ¶ 34. Moreover, Plaintiff's only

14   factual allegation is that police dog bites tend to happen more in San Jose than they do in San

15   Francisco. Plaintiff cites no facts that show that the San Jose Police Department allows its dogs to

16   bite suspects for longer than is reasonable or constitutional. Plaintiff's bare allegations, standing

17   alone are not sufficient to state a claim under *Monell*, and are insufficient to survive a motion to

18   dismiss.

19                   **b.   The City's Less-Lethal Bean-Bag Shotgun Policy**

20       Defendant contends that Plaintiff has pleaded insufficient facts to support Plaintiff's claim

21   that the City of San Jose has a policy of "allowing the deployment of less lethal shotguns on

22   persons who are not evading arrest or posing a threat to officers or bystanders." TAC ¶ 49.

23   Plaintiff's allegations regarding the alleged "less lethal shotgun policy" are limited only to

24   paragraph forty-nine of the TAC, in which Plaintiff states that the policy exists and that it was a

25   "moving force behind Plaintiff's constitutional injuries" because the policy made it "predictable

26   that constitutional violations would take place." *Id.* Plaintiff does not plead facts that would

27

28
     Case No. 20-CV-04777-LHK
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S
     THIRD AMENDED COMPLAINT

United States District Court
Northern District of California

1    support a finding that the City has any policy regarding less-lethal bean-bag shotguns because

2    Plaintiff makes no allegations that support a finding that the City itself made a "deliberate choice

3    to follow a course of action" regarding less-lethal bean-bag shotguns. *Fogel v. Collins*, 531 F.3d

4    824, 834 (9th Cir. 2008).

5            Plaintiff argues that in the Ninth Circuit, "a claim of municipal liability under [§] 1983 is

6    sufficient to withstand a motion to dismiss even if the claim is based on nothing more than a bare

7    allegation that the individual officer's conduct conformed to official police custom or practice."

8    Opp. 17 (quoting *Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1127 (9th Cir. 2002),

9    *abrogated in relevant part by AE ex rel. Hernandez*, 666 F.3d at 637).  But Plaintiff cites outdated

10   case law.  Specifically, the Ninth Circuit has since held that the "bare allegation" standard for

11   which Plaintiff advocates has been implicitly overruled by *Ashcroft v. Iqbal*, 556 U.S. 662 (2009),

12   and expressly overruled by *AE ex rel. Hernandez*, in which the Ninth Circuit held that the

13   minimalist pleading standard no longer applied to *Monell* claims.  *AE ex rel. Hernandez*, 666 F.3d

14   at 637.  The Ninth Circuit has also held that Plaintiff "cannot prove the existence of a municipal

15   policy or custom based solely on the occurrence of a single incident of unconstitutional action by a

16   non-policymaking employee."  *Davis v. City of Ellensburg*, 869 F.3d 1230, 1233 (9th Cir. 1989).

17   Therefore, Plaintiff needed to make more than a "bare allegation" in this case.  Plaintiff needed to

18   support his allegation with additional facts supporting his claim, including facts that suggest that

19   the City itself has a policy regarding less-lethal bean-bag shotguns.  Plaintiff failed to do so.

20           Given the dearth of factual allegations to support the existence of a policy "allowing the

21   deployment of less lethal shotguns on persons who are not evading arrest," Plaintiff's TAC does

22   not properly state a claim for an unconstitutional policy against the City.  *AE ex rel. Hernandez*,

23   666 F.3d at 637 (holding that a complaint attempting to state a § 1983 claim against a municipality

24   must include "allegation[s] of plausible facts supporting such a policy or custom").

25           **2.  The City's Customs**

26           A "custom" is "a widespread practice that, although not authorized by written law or

27                                                  36

28   Case No. 20-CV-04777-LHK
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S
     THIRD AMENDED COMPLAINT

1    express municipal policy, is so permanent and well-settled as to constitute a custom or usage with

2    the force of law." *St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988).  The Ninth Circuit has

3    "recognized that '[l]iability for improper custom may not be predicated on isolated or sporadic

4    incidents' and that '[t]he custom must be so persistent and widespread that it constitutes a

5    permanent and well settled city policy.'" *Hunter v. Cnty. of Sacramento*, 652 F.3d 1225, 1234

6    (9th Cir. 2011) (quoting *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996)).

7         Plaintiff's TAC alleges that the City of San Jose "has a custom and practice of

8    encouraging, or at the very least failing to properly/adequately discipline, the use of excessive

9    force by its officers on citizens."  TAC ¶ 51.  Plaintiff supports this allegation by citing a *San Jose*

10   *Mercury News* article from October 2020, which stated that the San Jose Police Department

11   "foster[s] an environment where San Jose police can use excessive force with impunity."  TAC

12   ¶ 35.  Plaintiff's TAC also cites the *Mercury News* article for the proposition that San Jose Police

13   Department officers who used excessive force on suspects and citizens were rarely disciplined.  *Id.*

14        United States Supreme Court case law holds that in order for a custom to be a municipal

15   policy, it must be "permanent" and "well-settled."  *Praprotnik*, 485 U.S. at 127.  Such a custom

16   must be so widespread and settled that it "constitutes a standard operating procedure of the

17   defendant."  *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1074 (9th Cir. 2016).  Other courts

18   have consistently followed this line of precedent as applied to statistical arguments, holding that

19   "[s]tatistics of unsustained complaints of excessive force . . . without any evidence that those

20   complaints had merit[] do[] not suffice to establish municipal liability under § 1983."  *Hocking v.*

21   *City of Roseville*, 2008 WL 1808250, at *5 (E.D. Cal. Apr. 22, 2008); *see also Strauss v. City of*

22   *Chicago*, 760 F.2d 765, 768–69 (7th Cir. 1985) (finding that the number of excessive force

23   complaints filed against a police department indicates "nothing," because people "may file a

24   complaint for many reasons, or for no reason at all").

25        The Court concludes that Plaintiff's TAC, which provides only one news article stating

26   that many complaints of excessive force are made against the San Jose Police Department, cannot

27

28                                                    37

1    support a claim against the City under *Monell* and *Praprotnik*. One newspaper article published

2    over a year after Plaintiff's incident cannot show that there was a "persistent and widespread"

3    custom that was the moving force behind Plaintiff's injury at the time of Plaintiff's incident, such

4    that excessive force was a standard operating procedure of the San Jose Police Department.

5    *Praprotnik*, 485 U.S. at 127; *Castro*, 833 F.3d at 1074. Therefore, Plaintiff's TAC does not

6    properly allege that the City of San Jose had an unconstitutional custom that injured Plaintiff.

        **3.   The City's Training**

8        Plaintiff next alleges that the City "does not train, or inadequately trains its Police Officers

9    regarding the use of force . . . [on] its citizens, as well as the handling and deployment of K-9's

10   and the use of less lethal shotguns." TAC ¶¶ 50–51. According to Plaintiff, the City's "lack of or

11   inadequate, training amounts to deliberate indifference towards the constitutional rights of

12   individuals." *Id*. ¶ 51.

13       "A municipality's culpability for a deprivation of rights is at its most tenuous where a

14   claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). For liability to

15   exist, "a municipality's failure to train its employees in a relevant respect must amount to

16   'deliberate indifference to the rights of persons with whom the [untrained employees] come into

17   contact.'" *Id*. (quoting *Canton v. Harris*, 489 U.S. 378, 388 (1989)). "'[D]eliberate indifference' is

18   a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious

19   consequence of his action.'" *Id*. (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*,

20   520 U.S. 397, 410 (1997)). Accordingly, "[a] pattern of similar constitutional violations by

21   untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes

22   of failure to train." *Id*. at 62 (quoting *Bryan Cnty.*, 520 U.S. at 409).

23       Following United States Supreme Court case law stating that failure to train claims require

24   pleading a pattern of unconstitutional violations, the Ninth Circuit has held that specific facts must

25   be alleged to support a plaintiff's failure to train theory. *See Blankenhorn v. City of Orange*, 485

26   F.3d 463, 484–85 (9th Cir. 2007) (rejecting a plaintiff's failure to train theory where the only

27

28
     Case No. 20-CV-04777-LHK
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S
     THIRD AMENDED COMPLAINT

United States District Court
Northern District of California

evidence of failure to train was the alleged failure to train the officer involved in the alleged unconstitutional incident); *Jessen v. County of Fresno*, 2019 WL 132271, at *9 (E.D. Cal. Jan. 7, 2019), *aff'd*, 2020 WL 1814750 (9th Cir. Apr. 9, 2020) (rejecting the plaintiffs' allegation that the County had failed to train its employees "because plaintiffs have failed to provide any evidence of a pattern of similar violations, or any evidence otherwise indicating deliberate indifference").

Following Ninth Circuit case law, the Court must find that Plaintiff's allegations are not sufficient to state a failure to train claim.  Plaintiff alleges that the City inadequately trains its officers, and that the City's "lack of or inadequate, training amounts to deliberate indifference towards the constitutional rights of individuals."  TAC ¶¶ 50–51.  However, Plaintiff never alleges facts that support the conclusion that the City inadequately trains its officers, and such allegations are required under Ninth Circuit case law.  For example, Plaintiff never alleges facts about any officer's training, about the inadequacy of that training, or about a pattern of constitutional violations resulting from inadequate training.  Without evidence of a pattern of similar constitutional violations, Plaintiff cannot state a *Monell* claim for failure to train.  *See Blankenhorn*, 485 F.3d at 484–85 ("Absent evidence of a 'program-wide inadequacy in training,' any shortfall in a single officer's training 'can only be classified as negligence on the part of the municipal defendant—a much lower standard of fault [than the required] deliberate indifference [standard].'").

Because Plaintiff has not alleged sufficient facts to support any of his *Monell* claim theories against the City of San Jose, Defendants' motion to dismiss Plaintiff's *Monell* claim against the City of San Jose is GRANTED.

Plaintiff has asserted a *Monell* claim against the City of San Jose in all four of Plaintiff's complaints.  ECF No. 1 ¶¶ 40–43; ECF No. 21 ¶¶ 39–42; ECF No. 26 ¶¶ 39–42; TAC ¶¶ 48–51.  Defendants have filed three motions to dismiss, each of which has identified the deficiencies of Plaintiff's *Monell* claim.  ECF No. 18 at 13–18 (describing how Plaintiff failed to plead specific facts about his *Monell* claim); ECF No. 30 at 15–22 (similar).  The Court previously dismissed

1    Plaintiff's *Monell* claim with leave to amend and warned Plaintiff that failure to cure the

2    deficiencies identified in the Court's order and in Defendants' motion to dismiss would result in

3    the dismissal of Plaintiff's *Monell* claim with prejudice.  ECF No. 39 at 13 ("Failure to [amend],

4    or failure to cure deficiencies identified herein *or identified in the instant motion to dismiss*, will

5    result in dismissal of the deficient claims with prejudice.").

6          Ninth Circuit case law grants discretion to district courts to deny leave to amend "due to

7    'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure

8    deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue

9    of allowance of the amendment, [and] futility of amendment.'"  *Leadsinger,* 512 F.3d at 532

10   (quoting *Foman*, 371 U.S. at 182).  To allow Plaintiff a fifth bite at the apple to adequately plead a

11   *Monell* claim and to require Defendants to file a fourth motion to dismiss would cause undue

12   delay and undue prejudice to Defendants.  *Id*.  Therefore, the Court grants Defendants' motion to

13   dismiss Plaintiff's *Monell* claim against the City of San Jose with prejudice.

14        **E.  State Law Claims**

15          Plaintiff alleges three separate state law claims against all defendants.  First, Plaintiff

16   alleges that the defendants committed battery or aided and abetted in committing battery "by

17   deliberately and intentionally deploying a police K-9 to attack and bite" Plaintiff, TAC ¶ 53, and

18   by "deliberately and intentionally firing a less lethal shotgun" at Plaintiff," TAC ¶ 55.  Second,

19   Plaintiff alleges that all defendants violated the Bane Act.  TAC ¶¶ 59–65.  Third and finally,

20   Plaintiff alleges that all the defendants were negligent in their actions against him.  TAC ¶¶ 66–71.

21          Defendants argue that Plaintiff has not alleged facts that would support any of his state law

22   claims.  The Court addresses each of Plaintiff's California state law claims in turn.

23        **1.  Battery**

24          Under Ninth Circuit case law, "battery is a state law tort counterpart to a 42 U.S.C. § 1983

25   excessive force claim." *Redmond v. San Jose Police Dep't*, 2017 WL 5495977, at *31 (N.D. Cal.

26   Nov. 16, 2017) (quoting *J.P. ex rel. Balderas v. City of Porterville*, 801 F. Supp. 2d 965, 992

27

28   Case No. 20-CV-04777-LHK
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S
     THIRD AMENDED COMPLAINT

40

1    (E.D. Cal. 2011)).  Generally, claims that officers used excessive force in the course of an arrest

2    "are analyzed under the reasonableness standard of the Fourth Amendment to the United States

3    Constitution."  *Brown v. Ransweiler*, 89 Cal. Rptr. 3d 801, 811 (Cal. Ct. App. 2009); *accord*

4    *Munuz v. City of Union City*, 16 Cal. Rptr. 3d 521, 539 (Cal. Ct. App. 2004).  Plaintiff alleges that

5    the officers committed battery by deploying the police dog, allowing the dog to bite Plaintiff for

6    more than 20 seconds, *id.* ¶ 54, and by deploying the less-lethal bean-bag shotgun at Plaintiff, *id.*

7    ¶ 55.  Defendants argue that there was no excessive force and that the officers acted reasonably, so

8    therefore there can be no liability for state law battery.  Mot. 20.

9           The Court will first analyze whether Plaintiff adequately pleaded a battery claim against

10   Officer Dunn for his deployment of his police canine.  Second, the Court will analyze whether

11   Plaintiff adequately pleaded a battery claim against Officer Dunn for the duration of the dog bite.

12   Third, the Court will analyze whether Plaintiff adequately pleaded a battery claim against Officer

13   Ferguson for his deployment of his less-lethal bean-bag shotgun.  Fourth and finally, the Court

14   will analyze if Plaintiff adequately pleaded that the remaining Defendants aided and abetted in

15   battering Plaintiff.

16                            **a.  Deployment of Police Dog**

17          Plaintiff alleges that Officer Dunn battered Plaintiff because Officer Dunn's deployment of

18   the police dog was unreasonable.  TAC ¶ 53.

19          Above, the Court determined that Officer Dunn's deployment of the police dog did not

20   violate clearly established case law.  *Supra* Section III.A.1.  Officer Dunn's actions were also

21   reasonable.  Officer Dunn entered Plaintiff's home believing that Plaintiff had committed a violent

22   crime.  TAC ¶ 16.  Moreover, Officer Dunn repeatedly warned Plaintiff that he would release the

23   police dog if Plaintiff did not follow Officer Dunn's instructions to descend the staircase from the

24   second to the first floor where the officers were located.  *Id.* ¶ 21.  Plaintiff repeatedly refused to

25   follow these directions.  Moreover, Plaintiff does not allege that Officer Dunn knew that Plaintiff

26   was unarmed or that there were no weapons on the second floor of Plaintiff's home.  *Id.*  Given the

27

28   Case No. 20-CV-04777-LHK
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S
     THIRD AMENDED COMPLAINT

United States District Court
Northern District of California

41

1   situation that Officer Dunn faced, and particularly given the fact that Officer Dunn repeatedly

2   warned Plaintiff that he would deploy the police dog if Plaintiff continued to ignore police

3   instructions, the Court cannot find that Officer Dunn behaved unreasonably in deploying his

4   police dog.  *See Lowry*, 858 F.3d at 1252 (holding that deployment of police dog was reasonable

5   when officer warned suspect in dark building that the police dog would be released if suspect did

6   not surrender).

7           Therefore, Plaintiff has failed to state a claim for battery due to the deployment of the

8   police dog, and Defendants' motion to dismiss the battery charge against Officer Dunn is

9   GRANTED.

10                          **b.  Duration of Dog Bite**

11          Plaintiff alleges that Officer Dunn battered him by allowing his police dog to bite Plaintiff

12  for over twenty seconds. TAC ¶ 54

13          Above, the Court determined that Officer Dunn used excessive force against Plaintiff by

14  allowing the police dog to continue to bite Plaintiff for over twenty seconds.  *Supra* Section

15  III.A.2.  Therefore, Defendants' argument that Plaintiff has not successfully stated a claim as to

16  the duration of the dog bite fails, and Defendants' motion to dismiss the battery charge against

17  Officer Dunn is DENIED.

18                    **c.  Use of Less-Lethal Bean-Bag Shotgun**

19          Plaintiff alleges that Officer Ferguson battered Plaintiff by shooting Plaintiff in the

20  stomach with a less-lethal bean-bag shotgun.  TAC ¶ 55.

21          Above, the Court determined that Officer Ferguson's use of the less-lethal bean-bag

22  shotgun did not violate clearly established case law.  *Supra* Section III.A.3.  Officer Ferguson's

23  actions were also reasonable.  Officer Ferguson entered Plaintiff's home believing that Plaintiff

24  had committed a violent crime.  TAC ¶ 16.  Plaintiff repeatedly refused to follow police officers'

25  instructions to descend the staircase.  TAC ¶ 21.  Plaintiff also does not allege that Officer

26  Ferguson knew that Plaintiff was unarmed or that there were no weapons on the second floor.  *Id.*

27

28  Case No. 20-CV-04777-LHK
    ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S
    THIRD AMENDED COMPLAINT

United States District Court
Northern District of California

1    It was therefore not unreasonable for Officer Ferguson to deploy his less-lethal shotgun on

2    Plaintiff.

3           Therefore, Plaintiff has failed to state a claim for battery due to the deployment of the less-

4    lethal bean-bag shotgun, and Defendants' motion to dismiss the battery charge against Officer

5    Ferguson is GRANTED.

6                          **d.   Aiding and Abetting Battery**

7           Finally, Plaintiff alleges that Sergeants Hatzenbuhler and Gutierrez and Officers Anderson,

8    Tapia, Vallejo, and Ochoa (collectively, the "Bystander Officers") are liable for aiding and

9    abetting in the battery against Plaintiff because they "knew that [Officers] Dunn and Ferguson

10   were committing a battery," and assisted in the battery "by threatening [P]laintiff with being shot

11   by pointing their firearms at him if he did not submit to the battery."  Opp. 18–19.  Defendants

12   argue that Plaintiff's allegations are not sufficient to state a claim that the officers aided and

13   abetted in the battery.

14          To properly state a claim that the officers aided and abetted in battery, Plaintiff must allege

15   that Defendants knew the conduct "constitute[ed] a breach of duty and [gave] substantial

16   assistance or encouragement to the other to so act."  *Austin B. v. Escondido Union Sch. Dist.*, 57

17   Cal. Rptr. 3d 454, 469 (Cal. Ct. App. 2007); *accord Casey v. U.S. Bank Nat'l Ass'n*, 26 Cal. Rptr.

18   3d 401 (2005).  Under California law, a party cannot be held liable for aiding and abetting an

19   intentional tort because of "mere knowledge that a tort is being committed and the failure to

20   prevent it."  *Austin B.*, 57 Cal. Rptr. 3d at 469 (quoting *Fiol v. Doellstedt*, 58 Cal. Rptr. 2d 308,

21   312 (1996)).

22          Plaintiff fails to make sufficient factual allegations about the conduct of the Bystander

23   Officers, such that the claim of aiding and abetting battery against those officers is plausible on its

24   face.  Plaintiff does not explain how the Bystander Officers gave "substantial assistance or

25   encouragement" to Officers Dunn and Ferguson other than by pointing their guns at Plaintiff.

26   Opp. 18–19.  Because the TAC merely states legal conclusions that the Bystander Officers aided

27

28   Case No. 20-CV-04777-LHK
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S
     THIRD AMENDED COMPLAINT

United States District Court
Northern District of California

43

1   and abetted in the alleged batteries committed by Officers Dunn and Ferguson, the Defendants'

2   motion to dismiss is GRANTED as to Plaintiff's aiding and abetting claim.

3       **2. Bane Act**

4       Plaintiff also brings a Bane Act claim against all Defendants. TAC ¶¶ 59–65.  Defendants

5   contend that this claim should be dismissed as to all Defendants.  Mot. at 20–22.  The Bane Act

6   provides a cause of action against a person who "interferes by threats, intimidation, or coercion, or

7   attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by any

8   individual or individuals of rights secured by the Constitution or laws of the United States."  Cal.

9   Civ. Code § 52.1; *accord Shoyoye v. Cnty. of Los Angeles*, 137 Cal. Rptr. 3d 839, 845 (2012).

10  Additionally, in order to properly plead a Bane Act claim, Plaintiff must show that Defendants had

11  the specific intent to "commit the act in question with the particular purpose of depriving the

12  citizen victim of his enjoyment of the interests protected by that right."  *Sandoval v. Cnty. of*

13  *Sonoma*, 912 F.3d 509, 520 (9th Cir. 2018) (quotation omitted); *accord Reese v. Cnty. of*

14  *Sacramento*, 888 F.3d 1030, 1044 (9th Cir. 2018) (holding that Plaintiff must allege specific intent

15  to violate arrestee's rights).  Thus, a claim under the Bane Act predicated on a Section 1983 claim

16  for excessive force "require[s] some showing of intent in addition to showing the constitutional

17  violation."  *Reese*, 888 F.3d at 1043.

18      In the instant case, Plaintiff has not alleged any facts to support that any of the Defendants

19  acted with the specific purpose to interfere with Plaintiff's enjoyment of his constitutional rights.

20  Although Plaintiff alleges that the Defendants intentionally deployed the police canine and the

21  less-lethal bean-bag shotgun, Plaintiff nowhere alleges that Defendants acted with the intent to

22  violate his Fourth Amendment right to be free from excessive force.  Even with respect to the

23  duration of the dog bite, Plaintiff does not allege that Defendants allowed the dog to bite him for

24  over twenty seconds with the intent to violate Plaintiff's Fourth Amendment rights.

25      In Plaintiff's opposition to the motion to dismiss, Plaintiff supports his Bane Act claim

26  only by stating that "the deployment of the police canine, the duration of the use of the canine

27

28  Case No. 20-CV-04777-LHK
    ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S
    THIRD AMENDED COMPLAINT

United States District Court
Northern District of California

44

attack, and the use of the less lethal shotgun were unreasonable," Opp. 18, and Plaintiff nowhere responds to Defendants' argument that he failed to plead specific intent.  A district court may find a cause of action waived where a plaintiff fails to defend the cause of action in its opposition to a motion to dismiss.  *See Conservation Force v. Salazar*, 677 F. Supp. 2d 1203, 1211 (N.D. Cal. 2009), *aff'd*, 646 F.3d 1240 (9th Cir. 2011) ("Where plaintiffs fail to provide a defense for a claim in opposition, the claim is deemed waived.").  By failing to respond to Defendants' argument that Plaintiff has failed to plead specific intent and thus failing to defend the Bane Act claim, Plaintiff's Bane Act claim is deemed waived.

Therefore, because Plaintiff fails to plead that any of the Defendants acted with the specific intent to violate his Fourth Amendment rights, Defendants' motion to dismiss Plaintiff's Bane Act claim is GRANTED.

### 3.  Negligence

Finally, Plaintiff brings a negligence claim against all Defendants.  TAC ¶¶ 66–71. Defendants contend that the negligence claim should be dismissed as to all Defendants. Mot. at 22–23.

Under California law, "[t]he elements of a negligence claim against a police officer are: (1) the officer owed plaintiff a duty of care; (2) the officer breached that duty by failing to use such skill, prudence, and diligence as other members of the profession commonly possess; (3) proximate cause between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the officer's negligence." *Black Lives Matter-Stockton Chapter v. San Joaquin County Sheriff's Office*, 398 F. Supp. 3d 660, 681 (E.D. Cal. 2019).  To prevail on a negligence claim against a police officer, the plaintiff must allege that "the police officer acted unreasonably and that the unreasonable behavior harmed" Plaintiff.  *Ortega v. City of Oakland*, 2008 WL 4532550, at *14 (N.D. Cal. Oct. 8, 2008).

Plaintiff has properly alleged claims against Officer Dunn because the TAC alleges sufficient facts to support the claim that Officer Dunn acted unreasonably by allowing his police

Case No. 20-CV-04777-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT

United States District Court
Northern District of California

1    canine to bite Plaintiff for more than twenty seconds. *See supra* Sections III.A.2.

2           However, Plaintiff fails to allege sufficient facts to claim that Officer Ferguson acted

3    negligently.  The Court has already found that Officer Ferguson acted reasonably in deploying the

4    less-lethal bean-bag shotgun.  *See supra* Section III.E.1.c.  Because the facts as alleged do not

5    establish that Officer Ferguson "acted unreasonably and that the unreasonable behavior harmed"

6    Plaintiff, *Ortega*, 2008 WL 4532550, at *14, Plaintiff's negligence claim against Officer Ferguson

7    cannot survive Defendants' motion to dismiss.

8           Additionally, Plaintiff fails to allege sufficient facts to claim that the Bystander Officers

9    acted negligently.  Plaintiff merely states that the Bystander Officers "owed Plaintiff a duty of due

10   care and that this duty was breached by the Defendants' failure to exercise due care in their

11   handling" of Plaintiff.  TAC ¶ 67.  Aside from this paragraph, there is no allegation as to what

12   "duty of due care" was breached, what specific actions or inactions the Bystander Officers took or

13   did not take that breached the duty of due care, or how those actions or inactions caused Plaintiff's

14   injury.  Other courts in this circuit have held that negligence claims that do not recite which

15   specific actions violated an officer's duty cannot survive a motion to dismiss.  *See Estate of*

16   *Bonilla v. Cnty. of Merced*, 2019 WL 1405551, at *9 (E.D. Cal. Mar. 28, 2019) (holding that a

17   plaintiff's complaint that failed to allege specific actions that did not meet the relevant standard of

18   care must be dismissed); *Samson v. Ukiah Valley Med. Ctr.*, 2015 WL 13661551, at *8 (N.D. Cal.

19   Sept. 10, 2015) (dismissing negligence claim when it was "unclear from the [complaint] which

20   specific action . . . the plaintiffs believe was negligent").

21          Because Plaintiff has alleged sufficient facts to support a plausible negligence claim

22   against Officer Dunn, the Defendants' motion to dismiss Plaintiff's negligence claim against

23   Officer Dunn is DENIED.  However, because the TAC fails to state specific factual allegations

24   about Officer Ferguson and the Bystander Officers, Defendants' motion to dismiss the negligence

25   claim against Officer Ferguson and the Bystander Officers is GRANTED.

26          **4.  Leave to Amend**

27
                                                 46

United States District Court
Northern District of California

1    The Court next addresses Plaintiff's request for leave to amend Plaintiff's Bane Act claim

2    and Plaintiff's battery and negligence claims.  Ninth Circuit case law grants discretion to district

3    courts to deny leave to amend "due to 'undue delay, bad faith or dilatory motive on the part of the

4    movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice

5    to the opposing party by virtue of allowance of the amendment, [and] futility of amendment.'"

6    *Leadsinger*, 512 F.3d at 532 (quoting *Foman*, 371 U.S. at 182).

7    Plaintiff has brought these same three state law claims in all four of Plaintiff's complaints.

8    ECF No. 1 ¶¶ 44–65; ECF No. 21 ¶¶ 43–62; ECF No. 26 ¶¶ 43–62; TAC ¶¶ 52–71.  Moreover,

9    Defendants have already filed three motions to dismiss, each of which identified the deficiencies

10   of these claims.  ECF No. 18 at 3–8, 9, 12; ECF No. 30 at 4–10; 12–13; 14–15.  The Court has

11   already dismissed these claims with leave to amend and warned Plaintiff that failure to cure the

12   deficiencies identified in the Court's order and in Defendants' motion to dismiss would result in

13   dismissal of the claims with prejudice.  ECF No. 39 at 13 ("Failure to [amend], or failure to cure

14   deficiencies identified herein *or identified in the instant motion to dismiss*, will result in dismissal

15   of the deficient claims with prejudice.").  To allow Plaintiff a fifth bite at the apple to adequately

16   plead the state law claims and to require Defendants to file a fourth motion to dismiss these claims

17   would cause undue delay and undue prejudice to Defendants.  Therefore, the Court GRANTS with

18   prejudice Defendants' motion to dismiss the Plaintiff's battery claim against Sergeants

19   Hatzenbuhler and Gutierrez and Officers Ferguson, Anderson, Tapia, Vallejo, and Ochoa;

20   Plaintiff's Bane Act claim as to all Defendants; and Plaintiff's negligence claim against Sergeants

21   Hatzenbuhler and Gutierrez and Officers Ferguson, Anderson, Tapia, Vallejo, and Ochoa.  The

22   Court DENIES Defendants' motion to dismiss Plaintiff's battery claim against Officer Dunn and

23   Plaintiff's negligence claim against Officer Dunn.

24   **IV.    CONCLUSION**

25   For the foregoing reasons Defendants' motion to dismiss is GRANTED with prejudice as

26   to the following:

27

28

Case No. 20-CV-04777-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S
THIRD AMENDED COMPLAINT

United States District Court
Northern District of California

- Plaintiff's § 1983 claim against Officer Dunn, Officer Ferguson, Sergeant Hatzenbuhler, Sergeant Gutierrez, Officer Anderson, Officer Tapia, Officer Vallejo, and Officer Ochoa for the deployment of the police dog;
- Plaintiff's § 1983 claim against Officer Dunn, Officer Ferguson, Sergeant Hatzenbuhler, Sergeant Gutierrez, Officer Anderson, Officer Tapia, Officer Vallejo, and Officer Ochoa based upon the deployment of the less-lethal bean-bag shotgun;
- Plaintiff's § 1983 claim against the City of San Jose;
- Plaintiff's battery claim against Officer Ferguson;
- Plaintiff's aiding and abetting battery claim against Sergeants Hatzenbuhler and Gutierrez and Officers Anderson, Tapia, Vallejo, and Ochoa;
- Plaintiff's Bane Act Claim against all Defendants;
- Plaintiff's negligence claim against Sergeants Hatzenbuhler and Gutierrez, and Officers Ferguson, Anderson, Tapia, Vallejo, and Ochoa.

For the foregoing reasons, Defendants' motion to dismiss is DENIED as to the following:

- Plaintiff's' § 1983 claim against the Officer Dunn, Officer Ferguson, Sergeant Hatzenbuhler, Sergeant Gutierrez, Officer Anderson, Officer Tapia, Officer Vallejo, and Officer Ochoa based upon the duration of the police dog bite;
- Plaintiff's battery claim against Officer Dunn;
- Plaintiff's negligence claim against Officer Dunn.

**IT IS SO ORDERED.**

Dated: December 23, 2021

_Lucy H. Koh_

LUCY G. KOH
United States Circuit Judge[*]

_United States District Court_
_Northern District of California_

---

[*] Sitting by designation on the United States District Court for the Northern District of California.

48